[S. F. No. 3355.   In Bank.—October 14, 1902.]

BERNARD D. MURPHY, Chairman, and ALEXANDER McCABE, Secretary, Democratic State Central Committee etc., Petitioners, v. CHARLES F. CURRY, Secretary of State, Respondent.

ELECTION LAW—NOMINEE OF MORE THAN ONE PARTY—DESIGNATION UPON PRINTED BALLOT—INVALID SECTION OF CODE—MANDAMUS.— The provisions of section 1197 of the Political Code, forbidding the name of a nominee to be placed upon the official ballot more than once, and requiring the nominee of more than one political party to make his election, and requiring the words ''No nomination'' to be placed in the blank space for a candidate's name, under such

· circumstances, are illegal and void; and the nominee of more than one political party is entitled to a writ of *mandamus* to compel the insertion of his name under the designation of each political party nominating him.

APPLICATION in the Supreme Court for writ of mandate to the Secretary of State.

The facts are stated in the opinion of the court.

William B. Bosley, Frank H. Gould, John J. Barrett, and James F. Tevlin, *Amicus Curiæ,* for Petitioners.

Tirey L. Ford, Attorney-General, U. S. Webb, and Thomas V. Cator, *Amicus Curiæ,* for Respondent.

HENSHAW, J.—Plaintiffs pray for a writ of mandate, directing the secretary of state to certify to the registrar of voters of the city and county of San Francisco the nomination of Edward J. Livernash as the candidate of the Democratic party for member of the House of Representatives from the fourth congressional district. Mr. Livernash had received the nomination from the Union Labor party, and also from the Democratic party. Each of the parties filed with the secretary of state, as required by law, a certificate in due form of the nomination of Mr. Livernash. The Union Labor party's certificate was the first filed. The certificates were in accord and complied with the provisions of sections 1189 and 1192 of the Political Code. Section 1197 of the same code contains the following provisions: . . . "Where a nominee has been assigned to or has chosen another column, pursuant to the provisions of this act the title of such office shall be printed in such party column, and underneath such title shall be printed in brevier capital type the words 'No nomination.' . . . The name of a candidate shall be printed only once upon the ballot, and if any candidate is nominated by more than one certificate of nomination, he must by a writing, signed and verified by him and filed with the officer where the certificate of nomination is filed, choose which of such party designations he desires to have his name printed under. Such writing, if filed with the secretary of state, must be filed at least twenty-seven days before the day of election. . . . and if any such

candidate shall not have so chosen, his name shall be placed upon the ballot under the designation of the party named in the certificate of his nomination which was first filed." Mr. Livernash declined to make the election contemplated by the law, and the secretary of state, relying upon the plain language of the statute, has refused to certify to the registrar of voters that Mr. Livernash has been nominated by the Democratic party. If the provisions of the law above quoted are valid, Mr. Livernash's name will appear upon the ballot but once, and that under the party designation of the "Union Labor Party"; while under the party designation "Democratic Party," and in the space set apart for the printing of the name of the nominee for the House of Representatives, will be printed "No nomination." It is insisted by petitioner that the provisions of the law which work this result are illegally discriminating and violative of sections 11 and 21 of article I of the constitution of this state.

The course of the secretary of state, respondent herein, is justified not only by the letter of the law, but by the decisions of the courts of last resort of at least three states which have had the same question under consideration. The Michigan supreme court, in *Todd v. Election Commissioners*, 104 Mich. 474, the Ohio supreme court, in *State* v. *Boyd*, 55 Ohio St. 224,[1] and the supreme court of Wisconsin, in *State* v. *Anderson*, 100 Wis. 523, have one and all decided that statutes essentially similar to ours were not unconstitutional, unreasonable, or discriminating. The only difference of consequence between our law and that which those courts had under review is, that ours requires the printing in the blank space reserved for the name of the candidate the words "No nomination," while by the other statutes the space is left blank. In the one case, therefore, the law puts before the voter the positively misleading, and indeed untruthful, statement that the party has made no nomination, while in the other, by a vacancy, it merely ignores the fact of such nomination. This, however, is a minor consideration, and the legal principles which should govern are as applicable to the one statute as to the other.

---

[1] 60 Am. St. Rep. 696.

Notwithstanding the great respect justly owing to the decisions of the courts to which we have referred,—a respect which is here fully accorded,—we cannot yield assent to the reasoning upon which their conclusions are based. It is said that the law is uniform in its operation, because it applies equally to each and every candidate; that as no candidate can have his name placed upon the ballot but once, and that as no candidate can come before the people as having received the nomination of more than one political party, therefore the uniformity required by law is observed and preserved. Such discrimination as may be shown to exist is said to be inevitable and not necessarily objectionable; while, as to the qualification feature, the qualification which compels the nominee to elect the party under whose designation his name shall be placed, it is said that the right of the individual to vote for the candidate of his choice is in no way interfered with. The conception of the court in reaching these conclusions is best expressed by the following quotation from the carefully considered case of *State* v. *Anderson,* 100 Wis. 523, above cited. There it is said: "Mere party fealty and party sentiment, which influence men to desire to be known as members of a particular organization, are not the subjects of constitutional care. It deals with individual right of the citizen to vote for the candidate of his choice, and, if that be not impaired, and reasonable opportunity be furnished for equal representation on the official ballot under a party designation, no unjust discrimination can successfully be claimed. Men are supposed to stand for principles when placed in nomination by political parties, and when the candidates of one party are identical with those of another, it is supposed, and not unreasonably, that for the time being at least, though there be two organizations, there is but one platform of principles, and that one party designation on the official ballot will satisfy all legitimate requirements of both. The confusion and uncertainty that would arise in such a case from the double printing of names furnishes a strong reason for prohibiting it, and that, with the other reasons mentioned, strongly supports the wisdom of the prohibition as a proper legislative regulation."

Throughout the opinions in all these cases it would seem that attention has been paid to the right of the individual voter, which, after all, is only incidentally here involved, to

the exclusion of the rights of political parties and of the rights of the nominees whom they have selected. If it be conceded that there is no vital impairment of the right of the individual voter in prohibiting the name of the nominee from being placed upon the ballot more than once, even when the nominee is the chosen candidate of more than one recognized political party, this by no means disposes of the rights of the political parties, or of the rights of the nominees of such parties, with the exercise of which the legislature has seen fit to interfere. It may be that in the ideal democracy, where intelligence is universal and knowledge wide-spread, the state, if it adopted the secret ballot, would do no more than print the designation of the offices to be filled, leaving blank spaces for the voters within which they could indicate the man or men of their choice. But under our system the state has gone much further than this. It has recognized the existence of different political parties, has ordained the machinery by which, and by which alone, they can hold conventions and select their nominees, has prescribed rules and regulations touching the form and matter of the official ballot, and upon that official ballot has arranged that political parties and their nominees shall have their appropriate places, and that there shall be conveyed to all the voters the information as to each nominee that he is the chosen candidate of at least one political party. But having gone so far, and having made of itself an information bureau, it becomes the duty of the state to convey information that is exact, that is fair to all political parties, and fair to the nominees of all political parties, as well as fair to the voter at the polls. Therefore, to the enactment of a valid law upon such matters, by uniformity of operation, justice must be done to all political parties and to all their nominees, and this, we think, the law under consideration fails to do for the following reasons:—

It certainly must be true that a political party in convention assembled may nominate whomsoever it pleases for any office, provided that person have the proper legal qualifications. It is a drastic interference with the rights of such political parties to refuse any recognition to any of its nominees because, and only because, some other political party has likewise seen fit to nominate him. Nor do we find any answer to this in the language above quoted from the Wis-

consin supreme court, to the effect that ''Men are supposed
to stand for principles when placed in nomination by political
parties, and when the candidates of one party are identical
with those of another, it is supposed, and not unreasonably,
that for the time being at least, though there should be two
organizations, there is but one platform of principles, and
that one party designation on the official ballot will satisfy
all legitimate requirements of both.'' Such a ''supposition,''
even if it have any foundation in fact, is not a legal pre-
sumption; nor is it a supposition which should be allowed in
any way to control the rights of political parties in their
councils and determinations. There is nothing in the law to
prevent the Republican and the Democratic parties, or any
other two or more political parties, from selecting the same
man as their candidate for any political office known to the
constitution of the United States or state; and if any con-
fusion of political principles should thereby result, that is a
matter wholly for the political parties themselves, and not at
all for either the legislature or the courts. There can be no
solid foundation in reason, therefore, for depriving one
political party of the right to have placed upon its ballot the
names of its nominees, solely because some other political
party has seen fit to select the same men. From the moment
that the legislature under the Australian ballot law saw fit to
recognize political parties as entities, and to circumscribe their
spheres of action, it became its duty to treat all justly and
impartially, and it is unjust, discriminating, and illegal to
deprive in this instance the Democratic party of the right to
place the name of its nominee for the House of Representa-
tives upon the official ballot,—an injustice which is accentu-
ated by the fact that in addition to this refusal the state
officially conveys the false information to its voters that the
Democratic party has made no nomination whatsoever for the
office.

Nor when the rights of the nominee are considered will
this law be found any more satisfactory. It is not a question
of ''party fealty'' or ''party sentiment,'' and it only dis-
poses of those rights by sweeping them away to say that
''mere party fealty and party sentiment, which influence
men to desire to be known as members of a particular organi-
zation, are not the subjects of constitutional care.'' It is

admitted that any nominee has the right to insist that his name shall be placed upon the official ballot, not only in its appropriate place, but with suitable printed words, to inform the voter that he is the nominee of a particular political party. Mr. Livernash, in the case at bar, has the unquestioned right under our election laws to insist that his name shall appear upon the ballot as the nominee of the Union Labor party, and he may compel the enforcement of this right by mandate. In this instance, therefore, the state has seen fit to recognize the desire of men to be known as members of a particular political organization, and has given them a right enforceable at law. Why, if it be the nominee's right to have the information conveyed to the voters, and if it be the state's duty to convey the information that he is the choice of one political party, should the law deprive him of the right to have the electors know that he is the choice of more than one party? The answer to this question will be found in what must have been the intent of the lawmakers—to prevent the combination or fusion of two or more political parties by their selection in common of the same candidates. But until it is pointed out to us that such a combination or such a fusion is violative of the constitution of the United States or of this state, or is against public policy, it must be held that the legislature herein has sought to exercise illegal control over political parties and their nominees, and in so doing has aimed an unwarranted blow at a vital principle of our republican government. If it be conceded, as we think it must, that a political party has the right to nominate (with a limitation of legal qualification) any one for office whom it sees fit to select, it follows that the nominee under our present ballot system has the corresponding right to have his name placed upon the ticket as the nominee of such political party or parties, and upon the state is imposed the correlative duty of seeing that this is done. Whether it be done by printing the name of the same candidate under the designation of each political party whose nomination he has received, or whether it be done, as heretofore it has been done, by printing the name once, followed by the names of the different parties which have selected him, is immaterial; but it is certain that in some appropriate way the political parties and the nominees of those parties, and the electors, may insist that the

ballot shall show not only the names of the candidates, but of what and of how many recognized political parties they may be the nominees. These views, we think, are in strict accord with the principles enunciated by this court in *Eaton* v. *Brown,* 96 Cal. 371,[1] and *Britton* v. *Election Commissioners,* 129 Cal. 337.

We conclude, therefore, that the provision of the law forbidding a nominee's name to be placed upon the official ticket but once, and the provision of the law requiring the nominee of more than one political party to make his election, and the further provision of the law forbidding his name to appear upon the ticket excepting as the nominee of one political party, and the further provision of the law requiring that the words "No nomination" shall be placed in the blank space reserved for a candidate's name, under the indicated circumstances, are each and all illegal and void, and that the petitioner is entitled to his writ as prayed for.

Let the writ issue accordingly.

Van Dyke, J., and Temple, J., concurred.

BEATTY, C. J., concurring.—I concur. It is not the duty, and, in my opinion, not the proper function, of the state to furnish information to voters as to the party connections or political proclivities of the candidates whose names appear upon the official ballot. The task of supplying that character of information is one which might with perfect justice and much greater wisdom be left to other agencies. But when the state does assume in its legislation the necessity or utility of printing upon the face of the ballot a statement showing what parties have nominated the several candidates, that statement should contain the whole truth, and, above all things, it should not be made obligatory upon the officials charged with the duty of preparing the ballot to print on its face the false statement that a party which has made a nomination for a particular office has in fact made no nomination. Such a provision is a plain violation of the principle upon which the statute is framed. The voters of the state, or certain classes of voters, either need or do not need the information. If they do not

---

[1] 31 Am. St. Rep. 225.

need it, there should be no pretense of giving it; if they do need it, there should be no perversion or suppression of the truth. The existing law assumes that the information is needed, but commands its agents to furnish false information. What is the motive or policy which requires the names of party candidates to be printed upon a distinctive party ticket? Evidently, it is intended as a guide to those voters who, being personally ignorant of the merits or qualifications of the rival candidates, would exercise their choice in favor of the candidate named by their party convention. The law itself assumes the existence of such a class of voters, and in the nature of things the class must be a large one. To deprive one candidate of the votes he would receive from this class of voters by making the ballot declare that his party has made no nomination is an injustice to him and to the electors of his party. The right to be chosen to a public office is as much a constitutional right as the right of suffrage, and to deprive any person possessing the constitutional qualifications for office of the opportunity of competing with other candidates upon equal terms is a denial of his constitutional rights. Each competitor is entitled to receive, not only the votes of every elector who supports him upon the ground of personal preference, but of all who would support him as their party nominee. And if the same person is nominated by more than one party, he has the same right to have that fact appear upon the ballot as other candidates have to appear as the nominees of one party.

The rights of the electors are the same as the rights of the candidates, and the rights of the parties spring from the rights of the electors.

All our election laws recognize in their substance and spirit that the only effective political action under a free constitution is that which is exercised by combination of voters through the medium of party organization, and it follows that any discrimination against parties or their candidates is a discrimination against the electors composing the party.

These considerations condemn the provision here assailed, and they condemn it upon constitutional grounds. In the case of *Eaton* v. *Brown*, 96 Cal. 375,[1] this court said of a similar provision in an earlier statute: "Upon these grounds

[1] 31 Am. St. Rep. 225.

we hold that this provision destroys the just and equal and uniform operation which in an election law, of all others, is demanded, no less by the express terms of our fundamental law than by the genius and spirit of our institutions.''

The law there under consideration gave an opportunity to every elector to cast his vote for the candidates of his choice, but it subjected certain classes of voters to the alternative of partial disfranchisement, or to the risk of total disfranchisement, unless they marked their ballots in a different and more inconvenient method than that prescribed for other classes of voters. This would have constituted no valid objection to the law in the estimation of the judges who concurred in the decisions cited from the supreme courts of Michigan, Ohio, and Wisconsin, and referred to in Justice Henshaw's opinion, all of which proceed upon the principle that an election law is not unconstitutional if it gives every elector an opportunity of expressing his choice, although as between different classes of electors it may give some a better opportunity than it allows to others; or, in other words, it is open to no constitutional objection if, while assuming the necessity of imparting certain information to the voters, it gives correct information to some and false information to others. Those decisions also are partly based upon the absence of any constitutional provision expressly granting to candidates the right to have their names printed more than once on the official ballot. I have not taken the time to look up the date of the adoption of the constitutions under which those cases arose, but if, like our own, they were adopted long before the official ballot was heard of, it is not strange that they contain no provisions regulating its form or contents. Certainly it is a circumstance of no importance that no specific provisions on the subject are to be found in our constitution if, as held in *Eaton* v. *Brown,* 96 Cal. 371,[1] and *Britton* v. *Election Commissioners,* 129 Cal. 337, its general provisions in regard to uniformity of operation of laws are broad enough to embrace such discriminations as were there condemned.

For these reasons, as well as for the reasons stated by Justice Henshaw, I concur in the judgment awarding a peremptory writ.

Harrison, J., dissented.

[1] 31 Am. St. Rep. 225.

McFARLAND, J., dissenting.—I dissent, and think that the writ should be denied. If other duties permit, I will hereafter state the grounds of my dissent.

GAROUTTE, J., dissenting.—I dissent from the conclusion declared in this case. Nearly three fourths of the states of this Union at the present time conduct their elections under some modified form of the Australian ballot law. In every one of those states a provision is found in the law similar to that which is here declared unconstitutional. It is thus apparent that the importance of the provision is recognized and established. And every time the validity of that provision has come before the highest courts of the various states it has been declared constitutional; those cases are cited in the main opinion, and are from the highest courts of Michigan, Ohio, and Wisconsin. And in the past few days we read in the public press that this provision of the law has been sustained by the appellate court of Kansas. It appears to be conceded by the main opinion that this provision is not unconstitutional as interfering with the rights of the individual voter, and this concession being made, then, to my mind, there is nothing left in this case. For I do not appreciate the proposition advanced in the main opinion which recognizes that a political party has constitutional rights. I have not been able to find that either the constitution of the state or of the United States in any way refers to political parties. The question here before the court is as to the power of the legislature in prescribing the form of the ballot, and, as intimated in *Britton* v. *Election Commissioners*, 129 Cal. 337, heretofore cited, if such had been the question in that case the conclusion would have been the other way. For it is there said: "This is not a mere matter of regulation, as in the case of the election ballot." Here the question is simply a mere matter of regulation as to the form of the election ballot. By this provision of the law all parties are treated alike, all candidates are treated alike, and all voters are treated alike. Under those conditions I do not see how the law can be declared unconstitutional. If the *general reasoning* found in the main opinion in this case, as well as in the Britton case, be constitutionally sound, then the whole Australian ballot law of this state will be set aside the first time an assault upon constitutional grounds is made

upon it. For I find by that law that parties polling less than a certain percentage of the votes cast at the last general election are not entitled to hold conventions and have their candidates go upon the ballot as nominees of those conventions. Under the aforesaid "general reasoning" this character of legislation would be held discriminatory against certain political parties, and therefore unconstitutional.

For the foregoing reasons I dissent from the conclusion declared.