[S. F. No. 5285. In Bank.—June 28, 1909.]

SOCIALIST PARTY (a Political Party), and HENRY HAGELSTEIN, as Chairman of the County Committee, representing said Party in the City and County of San Francisco, Petitioner, v. GEORGE UHL et al., as the Board of Election Commissioners of the City and County of San Francisco, and J. H. ZEMANSKY, the Registrar of Voters of said City and County, Respondents.

PRIMARY ELECTIONS—ACT OF MARCH 24, 1909, IS CONSTITUTIONAL.—
The act of March 24, 1909, entitled "An act to provide for and regulate primary elections and providing the method whereby electors of political parties may express their choice at such primary elections for United States senator," adopted in pursuance of the constitutional amendment of 1908, to section 2½ of article II of the constitution, is valid, and operated to supersede the so-called primary law of 1905 as amended in 1907, the provisions of which are contained in the Political Code in sections 1357 to 1375 inclusive.

ID.—TITLE OF ACT—SUBJECTS EXPRESSED IN TITLE ARE GERMANE—VOTE RELATIVE TO UNITED STATES SENATORS.—CONSTITUTIONAL LAW.—
The act is not violative of section 24 of article IV of the constitution, for embracing in its title subjects which are not germane. So far as concerns the provision of the act with reference to an advisory vote relative to United States senators, the matter of such advisory vote is germane to the subject of a primary election.

ID.—PROVISION FOR VOTING FOR UNITED STATES SENATOR DOES NOT INVALIDATE ACT.—The subject of the act being germane, so as not to fall within the inhibition of section 24 of article IV of the constitution, the act is not rendered invalid by reason of its provisions giving an opportunity to voters of the parties participating in the primary to express their choice for a candidate for United States senator. There is nothing in the constitution—either amendment of section 2½ of article II or any other provision—which prohibits the legislature from providing at a primary for an expression of a choice as to a candidate for United States senator. Although conducted at the same time, and under the same election machinery, it is not strictly a part of the primary election contemplated by the amendment of section 2½ of article II of the constitution.

ID.—PROVISIONS FOR NOMINATING CANDIDATES — REASONABLENESS OF TESTS AND CONDITIONS—NOMINATION BY POLITICAL PARTIES—NOMINATION BY PETITION.—The provisions of the act with reference to the nominations of candidates by "electors," "political parties" or "organizations of electors," are not unconstitutional. The legis-

lature had the power, under the amendment of section 2½ of article
II of the constitution to determine the reasonable tests and con-
ditions upon which such classes, or either of them, might par-
ticipate in such primary election, and might, as reasonable con-
ditions, practically provide that only political parties which had
candidates for presidential electors at the last presidential election,
or political organizations which, having no such candidates, yet were
represented by candidates on the official ballot at said presidential
election or last preceding state election, and received a certain
vote, should be entitled to participate, and that electors and bodies
of electors should have the right of nomination of independent
candidates by petition, as provided by section 1188 of the Political
Code.

ID.—LEGISLATURE MAY PRESCRIBE DIFFERENT TESTS AND CONDITIONS FOR
DIFFERENT CLASSES.—There is nothing in the constitutional amend-
ment which requires the legislature to adopt a universal mode where-
by all the classes mentioned may participate in the primary elec-
tion.    Under the power to provide tests and conditions, it may
prescribe different tests as to different classes, its power being
limited, however, to providing tests and conditions which are reason-
able and not arbitrary.

ID.—NOMINATION BY CLASSES OTHER THAN POLITICAL PARTIES—NON-
PARTICIPATION IN FIRST PRIMARY.—The fact that the mode of
nominating candidates under section 1188 of the Political Code,
given by the act to classes other than political organizations, does
not give them the right to participate in the first primary held
under the act, does not invalidate the act.    It provides a test
and condition under which electors or organizations of electors may
acquire the *status* of a political party and may go into future
primaries with the same rights as any other party, and in so doing
it meets the requirements of the amendment of section 2½ of article
II of the constitution.

ID.—INAPPLICABILITY OF ACT TO MUNICIPAL ELECTIONS—MUNICIPAL AF-
FAIRS.—Section 2 of the act, providing that its provisions as to
primary elections shall not apply "to the nomination of officers
of municipalities whose charters provide a system of nominating
candidates for such offices," does not invalidate the act by making
it special or local.    The amendment of section 2½ of article II
of the constitution does not require that such an act should apply
to all elections, but only to general elections.    So far as municipal-
ities are concerned, the law stands the same as any other general
law which, under section 6 of article XI of the constitution, is not
binding upon a municipality as to matters which are strictly
municipal affairs.    The election of municipal officers is strictly a
municipal affair.

ID.—PAYMENT OF FEES BY CANDIDATES—REASONABLENESS OF CONDITIONS.
—The provisions of the act requiring the payment of certain fees
by candidates on filing with the proper officer their nomination

papers and affidavits of candidacy, does not invalidate the act. Such provisions are not in conflict with section 24 of article I of the constitution, providing that no property qualification shall ever be required of any person to vote or hold office. Even if such provisions were in conflict with that section of the constitution, it would not invalidate the entire act. If eliminated, the rest of the act, providing a general scheme for primary elections, could stand. The exaction of such fees is sustainable, under the amendment of section 2½ of article II of the constitution, as a valid exercise of the power of the legislature to provide reasonable conditions for the exercise of the rights granted by the act, and as a reasonable restriction to prevent an indiscriminate scramble for office.

ID.—OATH OF CANDIDATE AS TO PARTY AFFILIATION.—The requirement of the act that when the nomination papers of a candidate are filed they shall be accompanied by an affidavit of the candidate declaring, among other things, the name of his party and that of the office for which he desires to be a candidate, that he affiliated with said party at the last preceding general election, and either that he did not vote thereat, or voted for a majority of the candidates of said party at such election and intends to so vote at the ensuing election, is a reasonable test, authorized by the amendment of section 2½ of article II of the constitution for the purpose of determining who are entitled to become party candidates. (Angellotti, J., dissenting.) Such requirement is not violative of section 3 of article XX of the constitution, prescribing the form of official oath, and declaring that "no other oath, declaration or test shall be required as a qualification for any office or public trust." That section only applies to persons who have been appointed or elected to office and are about to assume a discharge of the duties thereof, and does not apply to any oath which may be required to be taken by a candidate at a primary election.

ID.—NAME OF CANDIDATE ON OFFICIAL BALLOT—ELECTOR CAN ONLY VOTE FOR HIS PARTY CANDIDATE.—Under the tests provided in the act a person can have his name printed on the official ballot only as a candidate at a primary of the party with which he affiliated at the last general election, and an elector can only vote for persons to be candidates of the party with which he has registered that he affiliates. Both of these tests are reasonable, and such as under the constitutional provision relating to primary elections the legislature was authorized to provide. (Angellotti, J., dissenting.)

APPLICATION for a Writ of Mandate directed to the Board of Election Commissioners of the City and County of San Francisco, and to the Registrar of Voters of that City and County.

The facts are stated in the opinion of the court.

Austin Lewis, and R. M. Royce, and Frank P. Deering, *Amicus Curiæ,* for Petitioners.

Thomas V. Cator, Hugh McIsaac, and Percy V. Long, City Attorney, for Respondents.

Frank J. Sullivan, *Amicus Curiæ.*

LORIGAN, J.—This is an original application by the petitioners for a writ of *mandamus* to compel the respondents—the election commissioners and the registrar of voters of the city and county of San Francisco—to receive petitions and hold a primary election under the so-called primary law of 1901 [Stats. 1901, p. 606], as amended in 1907, [Stats. 1907, p. 650], the provisions of which are found in the Political Code embraced in sections 1357 to 1375 inclusive.

The petition contains all the necessary averments showing that the Socialist Party is a legal political entity entitled under the terms of the primary law referred to to participate in any primary election to be held under that law and to have a writ of mandate issued as prayed for by it if the said primary law is still in force.

It is further averred that the Socialist Party desires to file with said board of election commissioners its petition, pursuant to the provision (Pol. Code, sec. 1361) of said primary law, declaring its intention to hold a local political convention for said city and county for the purpose of making nominations of members of said party as candidates for public offices of said city and county to be voted for at the election to be held therein on November 3, 1909. It is further averred that it is the duty of said election commissioners, pursuant to the provisions of said primary law, to hold a primary election in said city and county on the second Tuesday in August, A. D. 1909, in which said Socialist Party is entitled to participate for the purpose of electing delegates to a nominating convention of said party for said city and county; that the board of election commissioners refuses to take any steps or make any preparations for the holding of a primary election on said second Tuesday of August, A. D. 1909, under said act of 1905 as amended, but on the contrary asserts that it does not intend to hold a primary election on said second Tuesday in August, but on the

third Tuesday of said month under the provisions of an act of the legislature approved March 24, A. D. 1909, entitled "An act to provide for and regulate primary elections and providing the method whereby electors of political parties may express their choice at such primary elections for United States senator."

In the petition for the writ it is contended by the petitioners that the act of March 24, 1909, under which the respondents are proceeding to conduct said primary election, is null and void as contravening various sections of the constitution of this state which are set forth in the petition; that the act of 1905 as amended is still in force and effect and that it is the duty of the respondents to proceed under the terms of that act and hold a primary election on the second Tuesday of August, 1909, and to make the necessary preparations for that purpose.

The respondents have demurred to the petition and the matter is submitted for final decision upon the demurrer.

The whole purpose of this proceeding is to test the validity of the Primary Election Act of March 24, 1909.

In 1890 an amendment to the constitution of the state was adopted (art. II, sec. 2½) as follows: "The legislature shall have the power to enact laws relative to the election of delegates to conventions of political parties at elections held and designated as primary elections . . . " It was under this constitutional provision that the primary law of 1905, as amended in 1907, was enacted and it applied, as the constitutional provision directed, solely to the election of delegates to the conventions of political parties at primary elections.

In 1908 this constitutional amendment was replaced by the existing section 2½ of article II thereof which provides, among other things, that "The legislature shall have the power to enact laws relative to the election of delegates to conventions of political parties; and the legislature shall enact laws providing for the direct nomination of candidates for public office, by electors, political parties, or organizations of electors without conventions at elections to be known and designated as primary elections; also to determine the tests and conditions upon which electors, political parties, or organizations of electors may participate in any such primary election. It shall also be lawful for the legislature to prescribe that any such primary elections shall be mandatory and obligatory

. . .; *provided, however,* that until the legislature shall enact a direct primary election law under the provisions of this section the present Primary Election Law shall remain in force and effect."

It was subsequent to this last amendment to the constitution that the act of March 24, 1909, was passed, and it purports to have been adopted in harmony with the mandate of that constitutional amendment.

Various objections are urged against the validity of the act, and we shall refer to the particular provisions thereof as we consider the special grounds upon which they are assailed. ·

It is insisted first that the entire act is void because it violates section 24 of article IV of the constitution which provides that "every act shall embrace but one subject, which subject shall be embraced in its title." The act is entitled "An act to provide for and regulate primary elections and providing the method whereby electors of political parties may express their choice at such primary elections for United States senator." The particular points made are that the provision in the title of the act relative to the expression of a choice by the electors for a candidate for United States senator, is a different subject-matter from nominating candidates for public office provided for in the title of the act referring to the regulating of primary elections and that the constitutional provision itself provides a distinct and complete subject for legislation and is limited to the making provision for the election of delegates to the conventions, and providing for the direct nomination at primaries of candidates for public office; that a United States senator is not a candidate for public office in the sense that the words are used in the constitutional provision, nor is an advisory vote to advise the legislature as to such choice a direct nomination of candidates for public office.

We cannot agree with counsel on these points. As far as the provision of the act with reference to an advisory vote relative to United States senators is concerned, we think that the matter of such advisory vote is germane to the subject of a primary election. It is so held in *State* v. *Blaisdell,* 118 N. W. (N. D.) 141, 146. The case of the *State* v. *Nichols,* 50 Wash. 508, [97 Pac. 728, 730], seems to be to the same effect. The subject being germane so as not to fall within the inhibition of the constitution relating to different subjects

in the title of the act, there is nothing in the point that the constitutional provision relative to providing for a primary election excludes the right of the legislature to provide, in a primary act, for the expression of a choice for United States senator by the voters at a primary election. Of course, it is conceded that the matter of selecting a United States senator lies with the legislature as an elective body and that such selection cannot be made at a primary election. What is provided for in the act on this subject is, however, the giving of an opportunity to voters of the parties participating in the primary to express their choice for a candidate for United States senator. The act as a primary act is distinct and complete as providing for direct nominations, with the added feature relating to an advisory vote relative to United States senators. There is nothing in the constitution—either the amendment of section 2½ of article II, or any other provision—which prohibits the legislature from providing at a primary for an expression of a choice as to a candidate for United States senator. It is within the general legislative power to do so, and that it has provided for this advisory vote at a primary election is for the purpose of convenience and to save expense and that the expression of such choice might be made by the voters of the respective political parties at the same time, and under the same political machinery, as is used at the general primary. Because conducted at the same time, and under the same election machinery, it is not strictly a part of the primary election contemplated by amendment 2½ of article II of the constitution. It is something in addition to it and, as said in the Blaisdell case, what is sought by the provision is "merely the consummation of an incomplete party nomination"; an expression of a choice by the voters as to a candidate for United States senator to be elected by the legislature. What the effect may be of these provisions relative to such choice by the electors—whether at all binding upon the legislature—is a matter of no present concern. We are only considering whether a provision for such advisory vote, expressed in the title of the act, is germane to the subject of a primary election also expressed therein, and whether legislation in connection with primary laws granting such right of expression of a choice is prohibited by the constitutional provision particularly under consideration, or any other, and we are

satisfied that the subject of the title giving the right to express such choice is germane to the subject of a primary election and that the legislation upon the subject embraced in the act in question is violative of no constitutional provision.

Now as to the objections which are urged against certain provisions of the act which, it is claimed, render the entire act void.

Section 5 thereof provides that the name of a candidate shall not go on the official ballot at the primary election unless nomination papers in his behalf are filed. These nomination papers must be signed and verified by qualified electors, and must contain, among other things, a statement of the political party with which such qualified electors affiliate, and a further declaration on their part that they intend to support the candidate named by them. These nomination papers, to the number of a designated percentage of the voters of the party of a candidate—the percentage depending upon whether he is a candidate for a state, congressional district, county, city, or city and county office—must be signed by such voters, and with the nomination affidavit of the candidate, filed, before such candidate is entitled to a place on the primary ballot.

It is further provided that the basis of such percentage in each case—that is as to the nomination of candidates by voters of his party—shall be the vote of the party for its candidates at the last preceding presidential election. But any other political organization which, at such presidential, or last state election, was represented on the official ballot by either regular party candidates or individual nominees only, who had received three per cent of the total vote at such presidential or state election in the state, or a political subdivision thereof, in which the candidate seeks the nomination, may have a separate primary election ticket as a political party.

It is also provided that "nothing herein shall be construed as prohibiting the independent nomination of candidates to be voted for at any general election by 'electors' or 'bodies of electors' as provided by section 1188 of the Political Code. . . ." The section of the Political Code referred to allows the nomination of candidates for public office by petition signed by electors equal in number to three per cent of the entire vote cast at the last preceding election in the state,

district, or political subdivision for which the nomination is to be made, and further authorizes the designation by the signers of the petition of a committee to represent said signers collectively as a political party by any name which may be selected and adopted by them.

These are practically all the provisions in the act with reference to the nomination of candidates.

It is insisted by the petitioner that as the only method provided for the nomination of candidates in the act is one for their nomination by "political parties" alone, that the legislature has failed to carry out the mandate of the constitution which requires that provision shall be made in any legislation with reference to a primary election for the nomination of candidates by "electors," "organizations of electors," as well as political parties; that the act is incomplete legislation on a subject where full legislation is constitutionally required, and, hence, the act is void; that the provisions of the act saving to electors, or bodies of electors, the right to nominate candidates to be elected to public office by petition as provided in section 1188 of the Political Code is a different mode of nomination than the constitutional mode of direct nomination at a primary, and which, it is insisted by petitioner, the constitutional mandate requires shall be accorded to all classes that are mentioned in the constitutional provision.

These objections to the validity of the act appear to present an abstract question as far as the record before us discloses. The petitioner is a political party whose right to participate in a primary is conceded and there are no "electors" or "organizations of electors" who are complaining as to the constitutionality of the law. This, however, does not prevent the particular attack on the act from being made, nor relieve us from the necessity of disposing of it.

Not much stress is laid upon the alleged failure of the legislature to provide for the participation in primaries of "electors" as distinct from "political parties" or "organizations of electors." The main argument is addressed to the difference in meaning between "political parties" and "organizations of electors." Ordinarily there would seem to be no distinction in meaning between these terms. They would appear to be synonymous. It is claimed, however, by petitioner that there is this distinction—namely, that "political

parties" are those which theretofore had participated in a struggle at the polls for political ascendancy and that "organizations of electors" are those who have not; new parties organized to advance some principle or measure of public policy, but which have not participated in any election and that it is such new parties to which the term "organizations of electors" applies, and whose right to participate in primaries must, in any act relating to a primary law, be provided for.

We are not prepared to say that this definition is not correct, but, conceding it to be true, we do not perceive anything in the constitutional provision which makes it the imperative duty of the legislature to provide any other mode for participation in a primary than such as it has done. In reading the constitutional amendment it will be noted that, while it provides enactment by the legislature for the direct nomination of candidates at primaries by "electors," "political parties," or "organizations of electors," it is equally provided that the legislature may determine the tests and conditions upon which such classes, or either of them, may participate in such primary election. Under this latter clause of the constitution we think it was left to the legislature to provide any reasonable tests or conditions under which participation by any of the classes mentioned in the primary law should be had, and that the fixing of conditions under which practically only political parties which had candidates for presidential electors at the last preceding presidential election, or political organizations which, having no such candidates, yet were represented by candidates on the official ballot at said presidential election or last preceding state election and received a certain vote, should be entitled to participate, together with the provision of the act with reference to section 1188 of the Political Code was a sufficient compliance with the constitutional requirement. That the legislature was authorized to fix some tests and conditions is clear. In doing so it had a right to take into consideration the political situation of the state disclosed by the existence of political parties and political organizations with which, at the last presidential or state election, the great majority of the voters of the state had allied themselves. The existence of these political parties and political organizations it could take notice of and legislate

CLV Cal.—50

intelligently concerning, and the particular provisions of the act apply to such political parties and organizations.

On the other hand organizations of electors as meaning something different from political parties is an indefinite term. Such organizations may as well mean an association together of a few electors—two, four, or six—as a large number. At best it is but an indefinite subject of legislation and one which may present difficulties to a legislature in the way of determining either what shall be considered organizations of electors, or to provide for participation when defined. There is nothing in the constitutional provision which requires the legislature to adopt a universal mode whereby all the classes mentioned may participate. Under the power to provide tests and conditions it may prescribe different tests as to different classes, its power being limited, however, to providing tests and conditions which are reasonable and not arbitrary. As far as political parties and political organizations are concerned, it has provided these tests and conditions and established a mode whereby they may participate, against which no objection upon the ground of unreasonableness can be urged. As to that class the legislation is complete.

On the other hand it has not, as it is claimed by petitioner, failed to establish a mode whereby classes other than political organizations may participate. It has saved to them the provisions of section 1188 of the Political Code. Under the terms of that section any electors, whether formed into an organization or not, may petition to have the names of any candidates they desire to nominate placed upon the official ballot to be voted for at the ensuing election, and may take any party designation they may choose to adopt which does not conflict with that of any party organization, and if at the election their candidates, or the party which they represent, receive the requisite vote, such party may at the succeeding primary be entitled to participate therein. With this provision in their behalf they are entitled to nominate candidates in any event and to participate in the primary elections if they receive the required vote to bring them within the conditions of the general primary law. Of course, it is contended that this mode of nominating under section 1188 of the Political Code is not granting a right to participate in the present primary. True, but it does give them an opportunity to participate in future primaries. It

provides a test and condition under which electors or organizations of electors may acquire the *status* of a political party and may go into a primary with the same rights as any other party. It is no valid objection that this mode does not provide for present participation in primaries. It provides, however, how participation may be had—the conditions under which it may be availed of—and as they secure the right when the tests or conditions are met, we think the rights which are conferred by the amendment on electors or organizations of electors are secured. It is true petitioner presents strong reasons why the constitutional amendment should be interpreted so as to hold that the legislature is required to make direct provision for the present right of participation in a primary by all classes mentioned in the constitutional provision. It is, however, a universal principle to be applied to the construction of statutes that such a construction shall be given as will sustain the law, and, notwithstanding the contention of the petitioner to the contrary, we are of the opinion that the legislature may adopt any reasonable tests or conditions and provide any mode which in effect secures the rights of all such classes and that, by the provision in the act with reference to section 1188, it has done so.

It is provided by section 2 of the act here in question that its provisions as to primary elections shall not apply "to the nomination of officers of municipalities whose charters provide a system of nominating candidates for such offices."

It is claimed that this exception from the operation of the act of chartered municipalities renders the act void, it being insisted that the act in question s not general, but is special and local, because it exempts municipalities operating under charter from the application of its provisions.

There are various municipalities in this state having charters which provide for the nomination of municipal officers by methods distinct from each other and different from the mode laid down under the primary law under discussion. They have systems of their own for the nomination of municipal officers. The city and county of San Francisco under its charter provides that its elections for municipal officers shall be held under the general laws of the state governing elections, and, hence, the primary law applies to it as a general law.

It is contended by petitioner that under the constitutional mandate it is required that the primary law shall apply to all elections, including elections for municipal officers. If this were true there would be merit in the claim of petitioner because the act, in so far as it attempts to exempt chartered municipalities, would result in the failure on the part of the legislature to execute the provisions of the constitution by making the law applicable to all elections; that instead of providing a general law, one special in its character has been enacted. But we do not think the position of petitioner tenable. While the act exempts chartered municipalities from its operation it is not thereby rendered special or local. The constitutional provision under which the primary law was enacted does not in terms require the passage of an act which would apply to all elections. It is obvious from its terms that the law which the legislature was called upon to enact was a law applying to general elections; elections that were conducted on party lines, and that the legislature was not required to pass a law applying to municipalities which might or might not happen to be conducted on such lines, and whose candidates might and generally do represent purely municipal policies or local issues. There is nothing in the constitutional provision making any primary law enacted thereunder applicable in charter elections. The law enacted under the constitutional provision stands, as far as municipalities are concerned, the same as any other general law which, under the constitution (art. XI, sec. 6), is not binding upon a municipality as to matters which are strictly municipal affairs. That the election of municipal officers is strictly a municipal affair goes without question. It is held in *People* v. *Hill*, 125 Cal. 16, [57 Pac. 669], that city charters prevail over the general law as far as regulating the method in which a charter election shall be conducted. If section 2½ referred to charter elections. as being within the scope of any legislation required to be enacted under it, there would be no room for discussion of this point. All the constitutional provision requires, however, is the passage of a general law relating to primary elections. As far as municipal elections are concerned, being municipal affairs, it cannot control them. Under these views the exemption of municipalities did not render the act unconstitutional for want of general application to all elections.

The act provides for the payment of certain fees by candidates on filing with the proper officer their nomination papers and affidavits of candidacy. These fees apply to all nominees —state, district, county, and municipal—and range from fifty dollars to be paid by a candidate for state office to ten dollars to be paid by county, legislative, or municipal officers, where the selection of candidates for municipal office is held under the primary law.

It is insisted that this provision with reference to the imposition of fees renders the act void as such imposition is in conflict with section 24 of article I of the constitution which prescribes that no property qualification shall ever be required of any person to vote or hold office.

If this position of petitioner were sound, however, it would not have the effect of invalidating the entire act. This provision could be declared unconstitutional without affecting the general scheme of the primary law, as it is not such an essential part of the law that if it were eliminated the rest of the act could not stand. But we are satisfied that the weight of authority is against the position of petitioner. The constitutional provision under which the primary law was passed gives the legislature the right to fix the conditions upon which participation in a primary election may be had. Under this grant of power it has the right to determine what are reasonable regulations under which the right to participate in the primary may be exercised. It is not claimed that the fees are unreasonable, but the right to exact them at all is questioned.

It is provided in the act that these fees are to be paid into the county or municipal treasury when they are paid by county or municipal candidates, and when paid by candidates for state or district nominations are to be apportioned and paid by the state treasurer to the county treasurer of the counties in which such candidates are to be voted for. The validity of this provision requiring the payment of fees is sustainable under the constitutional amendment, as being within the power of the legislature to provide reasonable conditions for the exercise of the rights granted by the primary law. As said by one court to which this question was presented: "The right to exact a reasonable fee for the privilege of running for office may be sustained, on the principle that fees in actions and proceedings in courts, and for filing and recording papers,

are sustainable; namely, that those who seek the benefit of a particular proceeding provided by law may be compelled to reimburse the state for a portion of the costs the state incurs in maintaining the instrumentality to carry into effect the particular proceeding. In other words the state asks the candidate for office under a particular law to reimburse it for a part of the expense it incurs in carrying that law into effect. This clearly the state may lawfully do." (*State* v. *Nichols,* 50 Wash. 508, [97 Pac. 728, 730].)

Aside from this, such a provision is a reasonable restriction and provides an orderly and systematic method by which the people may select their candidates for public office. The exaction of a fee tends to prevent an indiscriminate scramble for office. Where it is fixed at an amount that will impose no hardship upon any person for whom there should be any desire to vote as a nominee for any office, and yet enough to prevent the wholesale filing of petitions for nominations of any one regardless of whether or not he is a desirable candidate. It is but a reasonable means adopted by the legislature to regulate primary elections for the selection of candidates for public office. And the constitutional provision that no property qualification shall be required of any person to vote or hold office is not violated by such provision as to the payment of a fee, but is a reasonable regulation prescribed by the legislature on the wise assumption that any candidate who is of sufficient worth to stand before the people as a candidate for public office and whose candidacy calls for the payment of the fee required by the act will be at no difficulty to pay the required amount. (*State* v. *Scott,* 99 Minn. 145, [108 N. W. 829]; see, also, *Montgomery* v. *Schlef,* 118 Ky. 766, [82 S. W. 389].)

There are, it is true, cases that hold to the contrary view: *People* v. *Election Commissioners,* 221 Ill. 9, 21, [77 N. E. 321]; *State* v. *Drexel,* 74 Neb. 776, [105 N. W. 174, 179]; *Johnson* v. *Grand Forks County,* 16 S. Dak. 363, [113 N. W. 1071].

But as pointed out in *State* v. *Scott,* 99 Minn. 145, [108 N. W. 829], the provisions of the act involved in *State* v. *Drexel,* 74 Neb. 776, [105 N. W. 174, 179], and *People* v. *Election Commissioners,* 221 Ill. 9, [77 N. E. 321], called for, in the first of these cases, the payment of a fee based on the emolu-

ments of the office to which the candidate aspires, and, in the second case, the fee was made to correspond with the importance of the office from the standpoint of dignity and influence, as well as from the standpoint of emolument. In both these cases it was held that the fees imposed were arbitrary and unreasonable, bore no relation to the service rendered, and made the ability of a person to pay the test of his qualifications. While these cases held that the provisions of the act respecting fees were arbitrary and unreasonable, still it was recognized in both of them that some reasonable regulation might be adopted by the legislature to control a primary election for the selection of candidates for office, and within the view of the cases cited by us as sustaining the imposition of a fee it is apparent that the charge as made in the act of our legislature in question was a reasonable regulation upon the subject. The other case cited by petitioner—*Johnson* v. *Grand Forks County,* 16 S. Dak. 363, [113 N. W. 1071],—while grounded to a large extent upon *State* v. *Drexel,* 74 Neb. 776, [105 N. W. 174, 179], and *People* v. *Election Commissioners,* 221 Ill. 9, [77 N. E. 321], is based also on considerations independent of those set forth in those cases and sustains the position of petitioner. This, at best, presents a conflict of authority, but with a preponderance in favor of the validity of the imposition of a fee, and in our judgment the conclusion reached in the cases we have cited and which sustain the imposition of such fees as a reasonable regulation are the most satisfactory.

The act provides that when the nomination papers of a candidate are filed they shall be accompanied by an affidavit of such candidate declaring, among other things, the name of his party and that of the office for which he desires to be a candidate; that he affiliated with said party at the last preceding general election, and either that he did not vote thereat, or voted for a majority of the candidates of said party at said next preceding general election and intends to so vote at the ensuing election.

It is insisted that this provision requiring such an oath is violative of section 3 of article XX of the constitution which prescribes the form of oath to be taken by one before entering upon the duties of an office and which declare that "no other oath, declaration, or test shall be required as a qualification

for any office or public trust." But this section has nothing to do with any oath which may be required to be taken by a candidate at a primary election. It only applies to persons who have been appointed or elected to office and are about to assume a discharge of the duties thereof.

The power is vested in the legislature under section 2½ of article II, to determine the tests and conditions upon which participation in a primary election may be had either by electors as voters thereat or by electors as candidates thereunder. The right is thus conferred to prescribe any reasonable test and it is the duty of the legislature to prescribe one. Such a test is provided for in section 1366a of the Political Code as to electors wherein it is provided that an elector when registering shall declare the name of the political party with which he intends to affiliate at the ensuing primary election. And it further provides that he shall not be entitled to vote unless he states at the time of registration the name of the political party with which he intends to affiliate nor shall he be permitted to vote on behalf of any party other than the party designated in his registration. (*Schostag* v. *Cator,* 151 Cal. 600, [91 Pac. 502].)

The right and duty of the legislature to prescribe a test for electors voting at a primary cannot be questioned, nor do we perceive any reasonable grounds for questioning the validity of a test as to candidates. The obvious purpose of a primary law is to preserve the integrity of parties. The necessity for maintaining the integrity of such parties is recognized in the constitutional provision with reference to primary elections. The right which once exclusively vested in a political party to supply its own tests as to the rights of one to participate in its primary elections has been modified under the constitutional provisions empowering the legislature also to prescribe tests, and it is the duty of the legislature when legislating upon the subject of primaries to so legislate as to maintain the integrity of parties, and the integrity of any political party, and the success and furtherance of its principles and policies is best attained through legislation which will permit participation in its affairs by those only who are devoted to its principles and policies. It is manifestly proper for the legislature to permit only those to participate with a party at a primary election who are in sympathy with the aims of the party; those

who are committed to its principles and in sympathy with and
loyal to its tenets. In order to effect this end it is just as
desirable to prescribe a test whereby the right of a person
to become a candidate of a party at a primary election shall
be determined, as it is to furnish a test by which an elector
shall be permitted to vote for a party candidate at such elec-
tion. All these matters tend to sustain party integrity which
is one of the chief aims of a primary election law. If the
indiscriminate right to vote with any party at a primary were
given to electors, whether they were in accord with the prin-
ciples of the party or not, it would soon tend to destroy all
party organization. So, to permit persons to become indis-
criminately the candidates of any or all parties at a primary
election would tend to have the same effect. A political party
is an organization of electors believing in certain principles
concerning governmental affairs and urging the adoption and
execution of those principles through the election of their re-
spective candidates at the polls. The existence of such parties,
the dominant party and the parties in opposition to it, lies at
the foundation of our government and it is not expressing it
too strongly to say that such parties are essential to its very
existence. The design of the primary law is not to destroy
political parties, but while carefully preserving their integrity
to work out reforms in their methods of administration. Such
being the purpose of the law, it is not only proper to prescribe
such a test, but the absence of such a test would tend to work
the absolute disintegration and destruction of all parties ex-
cept for the saving power within the party itself of prescribing
its own tests and regulations. The power of a political party
to prescribe such a test for any of its members seeking pre-
ferment at its hands may not be doubted, and if the party can
prescribe such a test so also can the legislature. Thus the
legislature, in the interest of party integrity, not only wisely,
but as a duty, sought by test requirements, to confine the right
of electors to vote for candidates of a party, to those who had
registered as affiliating with the party, and likewise confined
the right of a person to have his name printed upon the official
ballot as a candidate for nomination by a party at such pri-
mary election to one who in his affidavit declared that he
affiliated with such party at the last preceding general elec-
tion, and who voted, if he voted at all, for a majority of the

candidates of the party at such election, and intends to so vote at the ensuing election. Under the test provided in this act a person can have his name printed on the official ballot only as a candidate at a primary of the party with which he affiliated at the last general election. Likewise under the act an elector can only vote for persons to be candidates of the party with which he has registered that he affiliates. These provisions deny the indiscriminate right of a person to become a candidate upon the official ballot of all parties or of any other party than the party with which he is affiliated, as it denies also the indiscriminate right of an elector to vote for persons as the candidates of any other party than the one he has declared his affiliation with. Both of these tests appear to us to be reasonable ones and such as under the constitutional provision relating to primary elections the legislature was authorized to provide.

The act further provides that a candidate defeated at a primary election shall be ineligible for nomination to the same office at the same election. It is insisted that this provision is void. The determination of this question may be properly reserved to a case when it arises. It is sufficient here to say that if this provision be void this fact would not operate to invalidate the remainder of the law.

These are the only points which we deem need particular discussion. Other attacks made upon the validity of the act, while considered, we do not discuss, as they are not deemed of sufficient importance to warrant it.

The petition for the writ is denied.

Melvin, J., Henshaw, J., Sloss, J., Shaw, J., and Beatty, C. J., concurred.

ANGELLOTTI, J., concurring.—I concur in the judgment and generally, except in one regard, in the views expressed by Justice Lorigan. I am unable to assent to his conclusion that the provision relative to the filing of an affidavit by any person designated by electors of a party for nomination, as a condition precedent to the printing of his name as a candidate on the primary ballot, in which affidavit he must state substantially that he is a member of the party for whose nomination he is designated, etc., is a valid provision. Its effect is,

of course, to prevent the printing on the ballot of the name of any person. as a candidate for the nomination of a political party unless he is a member of the party and has otherwise complied with the requirements of the provision.

It appears plain to me that the provision in the constitution giving the legislature the power to prescribe the tests and conditions upon which political parties, organizations of electors, and electors may participate in a primary election, was not intended to warrant a restriction in any degree of the right of the members of a party to nominate for any particular office any one whom they desire, who has the legal qualifications for the office, regardless of his political affiliations. The tests and conditions referred to in this provision are the tests and conditions upon which political organizations may have nominations made at the primary, and the tests and conditions upon which electors may participate, both in the selection of candidates for nomination by their party to be voted for at the primary, and in voting as members of a party at the primary itself, and have no reference to the persons who may be selected for nomination.

It has always been recognized that a political party has the absolute right to nominate any one for office whom it sees fit to select, regardless of his political affiliations, provided he has the proper legal qualifications for the office, and that each of two or more parties may nominate the same man as a candidate for the same office, and, as has been said by this court, "if any confusion of political principles should thereby result, that is a matter wholly for the political parties themselves, and not at all for either the legislature or the courts." (*Murphy* v. *Curry,* 137 Cal. 479, [70 Pac. 461].) The object of our constitutional provision relating to a direct primary law is simply to enable the members of a party to directly name the nominees thereof, instead of selecting them by the convention method—to empower them to do directly the thing they have been heretofore required to do through delegates or representatives elected by them. Their freedom of choice as to the candidates to be selected must be the same in the one case as in the other. No such control over parties as would enable the legislature to preclude a political party from nominating any person it desires to nominate who is legally eligible to the office, could have been contemplated. Whoso-

ever was eligible for nomination to any office by a party under the convention method, must be eligible under any direct primary law that may be enacted by the legislature.

The act before us does not even purport to make one *ineligible for nomination* by one political party simply because he is a member of another party. It purports to do no more than prevent the printing of his name on the official ballot as a candidate for nomination. Under the express terms of the act, any member of a party may write in the blank space contained on his ballot the name of *any person* as his choice for the nomination, and if a person whose name is not printed on the ballot receives in this way a plurality of the votes cast by members of the party, he is the nominee of the party, regardless of his previous or present political affiliations, and regardless of the fact that he may also be the nominee of another party for the same office. The objection to the legislative act in this regard is practically the same as the objection held to be good in *Eaton* v. *Brown*, 96 Cal. 375, [31 Am. St. Rep. 225, 31 Pac. 250]. The provision of the act under discussion "destroys the just and equal and uniform operation which in an election law, of all others, is demanded, no less by the express terms of our fundamental law than by the genius and spirit of our institutions." Under it, although members of a party, to the extent in number prescribed by the act for the selection of a candidate for nomination, desire to place before the electors of that party as a candidate for nomination thereby one who is not a member of the party, or did not affiliate with it at the last election, etc., they may not do so upon the same terms and with the same opportunity for the consideration of his candidacy by the electors of the party generally as are afforded the aggregations of members of that party which select as candidates for nomination persons who are members of the party and who can or will make the prescribed affidavit. We know, as a matter of fact, that the disadvantages that would result from the failure to have the name of such candidate printed on the ballot, while other names are printed thereon, are of such a nature as to practically preclude in most instances any fair consideration and expression as to his candidacy on the part of the electors of the party generally. The provision is thus clearly a substantial discrimination against such members of a party as desire

to select for a nomination for any office one who is not a member of the party, although under the very terms of the act he is eligible, and in favor of such members of the party as desire to award the nomination to some member of the party. Whatever may be our views as to which is the better policy for a political party to pursue in such a case, the question is one solely for the members of that party to settle, and not for the legislature or the courts. The discrimination is not warranted by any principle or rule of which I am aware, and operates to destroy the equal and uniform operation of the law which the constitution demands. The views expressed in *Murphy* v. *Curry,* 137 Cal. 479, [70 Pac. 461], and *Eaton* v. *Brown,* [31 Am. St. Rep. 225, 31 Pac. 250], fully sustain this conclusion.

It is very clear that the invalidity of this provision should not be held to invalidate the whole act, of which it is a very minor and unessential part.

What I have said does not, in my opinion, affect the conclusion reached in the opinion of Justice Lorigan as to the validity of the provision for the payment of a reasonable fee on the filing of the certificate of nomination. The conclusion that such a charge may be made by the state, if reasonable in amount, appears to be fully supported by principle and authority.