## Keane v. Lawrence, Secy. of the Commonwealth

*John N. Landberg*, for petitioner.

*Charles J. Margiotti*, Attorney General, for respondent.

HARGEST, P. J., July 23, 1937.—This case comes before us upon a petition for a writ of alternative mandamus directed to the Secretary of the Commonwealth, to require him to file all proferred nomination petitions without fees or deposits, for the reason that section 913 of the Pennsylvania Election Code of June 3, 1937 (no. 320), requiring such fees, is unconstitutional. An answer was filed, and the question is now presented on the constitutionality of that section.

This section regulates the place, the time, and the fees for filing nomination petitions. The schedule of fees is graded. Nomination petitions for the office of President of the United States and for any public office to be filled by the electors of the State at large must be accompanied by a fee of $50; for representatives in Congress or judge of a court of record, except those elected by the electors of the State at large, $35, and so on down to a judge or inspector of election, 50 cents. It is contended by petitioner that this section is unjust, discriminatory, unequal, and against public policy.

The regulation of elections is altogether a legislative function. As said in Wilson v. Philadelphia et al., 319 Pa. 47, 49:

"At the most plaintiff's arguments raise some doubt as to the wisdom of this legislation, but no sufficient legal reason is advanced for striking it down. 'The power to regulate elections is legislative, and has always been exercised by the law-making branch of the government. Error of judgment in the execution of the legislative power, or mistaken views as to the policy of the law, or the wisdom of the regulations, do not furnish grounds for declaring an election law invalid unless there is a plain violation of some constitutional requirement': Winston v. Moore, 244 Pa. 447, 454."

The Constitution of Pennsylvania, art. I, sec. 5, does not guarantee to the people anything with respect to elections except that:

"Elections shall be free and equal; and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage."

The provision that elections shall be free does not mean that they shall be absolutely without expense to the candidate. Freedom in that sense means the freedom to exercise the right of suffrage. It cannot be said, even if the freedom of elections means freedom from unjust impositions and restrictions, that a reasonable regulation involving the exaction of filing fees would interfere with constitutional freedom. Under this statute there is no discrimination. Every intending candidate, regardless of whatever party he may represent, must pay the same fees. Therefore, the statute cannot be said to be discriminatory, and for the same reason it cannot be said to be unequal.

The only other inquiry is as to whether it is against public policy. If the fees are so large as to show that they are arbitrary and unreasonable and have no proper relation to either the regulation or expense of elections, they might be said to be both unconstitutional and against

public policy. The cases are not altogether in harmony on this subject: "Elections," 20 C. J. sec. 114, notes 30 and 31.

The cases sustaining the right to impose filing fees are illustrated by Socialist Party et al. v. Uhl et al., 155 Cal. 776, 789, 103 Pac. 181, 187. The statute under review in this case required fees for all nominees, State, district, county and municipal, ranging from $50 for a State office to $10 for a county or municipal office. It was insisted that the provision was in conflict with the Constitution, which prescribed that no property qualification should ever be required of any person to vote or hold office. The court said:

"But we are satisfied that the weight of authority is against the position of petitioner. The constitutional provision under which the primary law was passed gives the legislature the right to fix the conditions upon which participation in a primary election may be had. Under this grant of power it has the right to determine what are reasonable regulations under which the right to participate in the primary may be exercised. It is not claimed that the fees are unreasonable, but the right to exact them at all is questioned . . . such a provision is a reasonable restriction and provides an orderly and systematic method by which the people may select their candidates for public office. The exaction of a fee tends to prevent an indiscriminate scramble for office, where it is fixed at an amount that will impose no hardship upon any person for whom there should be any desire to vote as a nominee for any office, and yet enough to prevent the wholesale filing of petitions for nominations of any one regardless of whether or not he is a desirable candidate. It is but a reasonable means adopted by the legislature to regulate primary elections for the selection of candidates for public office. And the constitutional provision that no property qualification shall be required of any person to vote or hold office is not violated by such provision as to the payment of a fee, but is a reasonable regulation prescribed by

the legislature on the wise assumption that any candidate who is of sufficient worth to stand before the people as a candidate for public office and whose candidacy calls for the payment of the fee required by the act will be at no difficulty to pay the required amount."

The converse is presented by the case of People, ex rel., v. Board of Election Commissioners of City of Chicago, 221 Ill. 9, 21, 77 N. E. 321, 324. The statute of that State required a candidate for governor or United States senator or representative in Congress to pay a filing fee of $100; for State senator, $50; for member of the House of Representatives, $25; for alderman, $25. The court said:

"These payments bear no relation to the services rendered in filing the papers or the expenses of the election. They are purely arbitrary exactions of money, to be paid into the public treasuries as a monetary consideration for being permitted to be a candidate. The payments are not intended as compensation for services rendered in filing the papers, but the provisions make the ability and inclination of a person to pay money a test of his qualification and of the right of the voters to choose him for public office. Every eligible person has a right to be a candidate for a public office without being subject to arbitrary or unreasonable burdens. The voters have a right to choose any eligible person, and he owes a duty to the public to qualify and serve."

The weight of opinion, both in numbers and in reason, we think, sustains the proposition that the court cannot say as a matter of law that the legislature has abused its power in imposing the fees required by the present statute and that the action of the legislature is arbitrary and the fees have no relation to a reasonable regulation of election.

We, therefore, adopt the reasoning of the California case. It follows that there is nothing either unconstitutional or against public policy in the section of the statute attacked. For these reasons the alternative mandamus is hereby quashed, and the petition dismissed at the cost of petitioner.