[Civ. No. 5546.  Third Appellate District—October 28, 1935.]

ABRAHAM J. HARDER, Petitioner, v. H. G. DENTON, as City Clerk, etc., Respondent.

H. N. Dyke for Petitioner.

Hugh B. Bradford, City Attorney, for Respondent.

THE COURT.—Mr. Justice Plummer orally delivered the opinion of the court on October 28, 1935, as follows:

The Constitution of the state of California, article XI, section 8 thereof, the section having to do with adoption of a city charter and its approval by the legislature, provides as follows:

"The legislature shall by concurrent resolution approve or reject such charter as a whole, without power of alteration or amendment; and if approved by a majority of the members elected to each house it shall become the organic law of such city or city and county, and supersede any existing charter and all laws inconsistent therewith."

Subdivision 4, section 8½, of article XI, scheduling the powers that may be set forth in a city charter, specifies that the city charter may provide:

"For the manner in which and the times at which any municipal election shall be held and the result thereof determined; for the manner in which, the times at which, and the terms for which the members of all boards of election shall be elected or appointed, and for the constitution, regulation, compensation and government of such boards, and of their clerks and attaches, and for all expenses incident to the holding of any election."

Section 11 of article XI reads:

"Any county, city, town, or township may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws."

By the first excerpt from section 8 of article XI of the Constitution, which I have just read, after the adoption of the charter by the voters of the city of Sacramento and its approval by the legislature, the legislature possessed no authority thereafter to pass any law which would limit, alter or amend any of the provisions of the city charter. That becomes the fundamental law of the city. True, if there is anything in the charter which is violative of any constitutional provision that portion of the charter, of course, is void, even though ratified by the people and approved by the legislature.

Preliminarily, I may state that the elective franchise is a sacred right. Every elector of the city is interested in the

maintenance of that right. Every elector of the city is also interested in seeing that the persons for whom he intends to vote may have a fair opportunity to win the election. When any act is taken which interferes with that right, which limits that right, or subjects that right to the wish or desire of a clerical officer the exercise of that power is not discretionary, it is not directory, it is mandatory, for the simple reason that no clerical officer possesses the right or the power or the authority to limit or in any way by his acts abridge the rights of an elector. If a method of action is pointed out for the clerical officer which subserves the rights of the electors the privilege of the clerical officer to limit that right does not exist.

So much for the claimed directory provision of section 273 of the charter of the city of Sacramento, that provision for the arrangement of the names upon the ballot, the full names of all regularly nominated candidates shall be printed on the official ballots in the alphabetical order of the surnames. True, that does not relate to the sample ballots. We are having to do with the official ballot and the language of the section under the provisions of the Constitution which I have read becomes and is the fundamental law of the city of Sacramento unless it has been abrogated by some decision of the court or by an amendment duly ratified by the voters of the city and approved by the legislature. Has that been done?

In determining the force and effect of a decision it is necessary to inquire into the questions which are presented for the court to determine. Frequently in an opinion by the court there is language which is simply the opinion of the writer thereof and does not decide the questions which are presented to the court and therefore does not become the law of the case which it decides. They are simply opinions of the writer and frequently there enter into opinions words, sentences and sometimes whole paragraphs not necessary to an opinion and not based on questions presented to the court for determination. In the case of *People* v. *Elkus,* which seems to be relied upon by both parties, an examination leads to the conclusion that the court had before it simply one question and that is whether the proportional system of voting, or the Hare system as it is commonly called, as set forth in the charter, was a valid provision or whether it controverted provisions of the Constitution. After considering the ques-

tion at great length and citing numerous authorities holding that the proportional system of voting as incorporated in section 273 of the charter violated the constitutional or fundamental rights of the electors, the court decided that that portion of section 273 of the charter of the city of Sacramento was unconstitutional and void. Without going further into the facts of that case, I will simply state an examination supports absolutely just what I have stated. So we turn to *People* v. *Elkus*, 59 Cal. App. 396, page 407 [211 Pac. 34], to ascertain just what the court held, what it decided, what became the law of that case. It is as follows:

"It must be held that the proportional representation system of voting provided for in the charter is violative of the elector's constitutional right to vote at all elections. The power of the people of the state, by constitutional amendment, to authorize municipalities to adopt the Hare system of voting is not doubted, but it is clear that they have not done so. In reaching this conclusion, full consideration has been given to the principle that all laws are presumed to be constitutional and that they are to be declared invalid only when they clearly appear to be so. The court has also given consideration to the practical effect of holding the proportional representation system of voting unconstitutional."

That is what the court decided in the case of *People* v. *Elkus*. The language upon which the respondent in this case relies is no part of the decision of the court. That language is simply the opinion of the writer of the decision from which I have just been quoting. Now, I do not reflect in the least upon Presiding Justice Finch. He was an able lawyer and a good judge, but inserted language which has nothing to do with this case. He simply says:

"Future elections of council members may be conducted under the general laws of the state, if the charter be not amended to provide a different procedure," etc.

I do not need to read any further from it. The case did not call for any recommendation on the part of the court. It called for a decision as to the constitutionality or unconstitutionality of section 273. By the language which I have quoted it is clear and decisive that the intention of the court and the purpose of the court was to declare void and unconstitutional the proportional system of voting.

Now let us consider section 273 of the charter. The first paragraph reads:

"The full names of all regularly nominated candidates shall be printed on the official ballots in the alphabetical order of the surnames."

That is a distinct, separate and plain provision as to the manner in which the official ballots shall be printed. Following that is set forth in distinct paragraphs the proportional system of voting and how the ballots shall be counted, which under the decision of *People* v. *Elkus* was held to be unconstitutional for the reason that it violated the fundamental right of an elector to vote.

There are two subjects in the section, one, separate and distinct, the printing of the ballot, and two, separate and distinct, the proportional system of voting. They are not correlated, they are not dependent one upon the other. They are just as distinct and separate as though they were embodied in separate and distinct sections of the charter. It is a fundamental rule of decisions on constitutional questions that if a portion of a section or a portion of a law stands alone—I mean a portion of an enactment stands alone—is not dependent upon or correlated to any other portion either of the act or of the section and there are no constitutional objections to the portion so set forth, it is unaffected by the decision which holds other portions of the section invalid or other sections of the act invalid. This question was before the Supreme Court of this state in the case of *McCabe* v. *Jefferds*, 122 Cal. 302 [54 Pac. 897]. That was a case where after providing for county government, fees, etc., there was a provision added, "This act shall go into effect immediately." The Supreme Court held that provision, that part of the act, void; it had nothing to do with the first, it had nothing to do with compensation. It simply provided for the time of the act going into effect. The court declared that portion void. I quote from that decision which quotes from Cooley on Constitutional Limitations:

" 'The constitutional and unconstitutional provisions may even be contained in the same section, and yet be perfectly distinct and separable, so that the first may stand though the last fall. The point is not whether they are contained in the same section; for the distribution into sections is purely artificial; but whether they are essentially and inseparably con-

nected in substance. If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained.' "

The same principle was enunciated in this court in the case of *Cook* v. *Mason,* 103 Cal. App. 6 [283 Pac. 891], concurred in by Justice Thompson and Presiding Justice Finch. The decision was written by Judge Jamison acting as a *pro tempore* justice. A later case is that of *People* v. *Deletorre,* 124 Cal. App. 559 [12 Pac. (2d) 1068], in which is taken up and cited practically all of the decisions having to do with constitutional questions in finding a portion of the section or act invalid and sustaining other portions. I simply refer to that case without taking time to cite the authorities.

Under the decisions which I have just read it is clear that the first provision of section 273 which provides for the printing of the official ballot is entirely separate and distinct from voting the ballot, and it must be held the decision of *People* v. *Elkus* only eliminated the proportional part of the section and left in full force and effect the first paragraph of section 273 providing for the printing of the official ballot and so holding the decision of the court must be that the respondent has no power or authority to print the ballot other than in accordance with the provisions of the first paragraph of section 273, and the writ of mandate is granted.