[Civ. No. 32101.   Second Dist., Div. One.   May 22, 1968.]

MALCOLM H. MACKEY, Plaintiff and Respondent, v. WALTER C. THIEL, as City Clerk, etc., Defendant and Appellant.

Roger Arnebergh, City Attorney, Bourke Jones and Claude E. Hilker, Assistant City Attorneys, and Jerome Montgomery, Deputy City Attorney, for Defendant and Appellant.

Edward T. Butler, City Attorney (San Diego) and Brian J. Newman-Crawford, Deputy City Attorney, as Amici Curiae on behalf of Defendant and Appellant.

Malcolm H. Mackey, in pro. per., and Stanley Sapiro for Plaintiff and Respondent.

LILLIE, J.—In January of 1967 petitioner was a candidate for city councilman in the 14th district and requested defendant to provide him with an appropriate form on which to set forth a statement of his qualifications as provided by section 10012.5, Elections Code.[1] Defendant refused to comply, asserting that the provisions of the statute do not apply to the City of Los Angeles as a chartered city (art. XI, § 8, Cal. Const.). An alternative writ of mandate was issued and subsequently, upon submission of the cause, a peremptory

---

[1] As added by Statutes 1965, chapter 1810, section 1, said section reads as follows: "Each candidate for elective office in any local agency, city, county, city and county or district may prepare a statement of qualifications on an appropriate form provided by the clerk. Such statement may include the name, age, occupation, and education of the candidate and a brief description of no more than 150 words, of the candidate's qualifications expressed by the candidate himself. Such statement shall not include the party affiliation of the candidate, nor membership or activity in partisan political organizations. Such statement shall be filed at the time nominating papers are filed.

"The clerk shall send to each voter together with the sample ballot, a voter's pamphlet which contains the written statements of each candidate's qualifications that is prepared pursuant to this section.

"The local agency may bill each candidate availing himself of this service a sum not greater than the actual prorated costs of printing and handling incurred by the agency as a result of providing this service. Only these charges may be levied and each candidate using this service shall be charged the same.

"The clerk shall reject any statement which contains any obscene, vulgar, profane, scandalous, libelous or defamatory matter, or any language which in any way incites, counsels, promotes or advocates hatred, abuse, violence or hostility toward, or which tends to cast ridicule or shame upon any person or group of persons by reason of race, color, religion or manner of worship, or any language or matter the circulation of which through the mails is prohibited by Congress.

"Nothing in this section shall be deemed to make any such statement or the authors thereof free or exempt from any civil or criminal action or penalty because of any false, slanderous or libelous statements offered for printing or contained in the voter's pamphlet."

writ which ordered defendant to provide the form sought and otherwise comply with the statute in question. The instant appeal is from the judgment directing the issuance of the peremptory writ.

In his answer to the petition for the peremptory writ, defendant alleged that section 8½ of article XI specifically grants to chartered cities the right to provide the manner in which municipal elections shall be conducted; that pursuant thereto and further pursuant to charter authority (§ 306) an Election Code for the City of Los Angeles was adopted in 1946 providing for a comprehensive set of rules governing all phases of city elections; and that the Election Code thus adopted provides for certain information of a substantive nature respecting *issues* to be included with the mailing of sample ballots but not *candidate qualification* booklets as provided in section 10012.5. It is pointed out on this appeal that the enactment by the City of the above section 306 (Los Angeles Charter) had constitutional sanction in that section 8½, *supra,* declares that ''It shall be competent in any charter framed in accordance with the provisions of this section . . . for any city or consolidated city and county, and *plenary authority is hereby granted* . . . to provide therein or by any amendment thereto, the manner in which, the method by which, the times at which, and the terms for which the several county and municipal officers and employees whose compensation is paid by such city or city and county, excepting judges of the superior court, shall be elected or appointed, and for their recall and removal. . . .'' (Italics added.) Such ''plenary authority'' having been given the City, pursuant to which section 306 and its own Election Code were thereafter adopted, it is contended that the latter code, wherein no provision is made for the mailing of candidate qualification pamphlets, should prevail over the provisions of section 10012.5 (Elections Code) which conflict with ''the manner in which, [and] the method by which'' the City has decided that its various ''municipal officers . . . shall be elected.'' Such contention, it is further asserted, has the support of decisional law to the effect that local municipal elections are strictly municipal affairs.

Respondent, on the other hand, invokes *Professional Fire Fighters, Inc.* v. *City of Los Angeles,* 60 Cal.2d 276 [32 Cal. Rptr. 830, 384 P.2d 158], to the effect that since the various sections of article XI fail to define ''municipal affairs,'' the courts must decide under the facts of each case whether the subject matter is of municipal or statewide concern; such

question, the court therein stated, "must be determined from the legislative purpose of each individual instance." (P. 294.) There it was held that the legislative object of pertinent provisions of the Labor Code was to create uniform fair labor practices throughout the state, the court concluding that "Labor relations are of the same statewide concern as workmen's compensation, liability of municipalities for tort, perfecting and filing of claims, and the requirement to subscribe to loyalty oaths." (P. 295.) By analogy respondent argues that the enactment of section 10012.5 had for its purpose the creation of an informed and educated electorate on a statewide basis; assertedly illustrative of this claim is the "Truth in Endorsements Law" (Elec. Code, § 8600 et seq.) the constitutionality of which was upheld in *California Democratic Council* v. *Arnebergh,* 233 Cal.App.2d 425 [43 Cal. Rptr. 531], and certain language quoted from a Kansas case in *Canon* v. *Justice Court,* 61 Cal.2d 446, 458 [39 Cal.Rptr. 228, 393 P.2d 428], for the proposition that discussion by the voters of the "character and qualifications of candidates" is "of the utmost consequence." He makes the not implausible argument that since three-fifths of the 1966-1967 state budget was spent within the boundaries of chartered cities, it would seem a matter of state concern that this money was wisely spent by elected officials whose qualifications previously were made known to the voters in the manner provided by the statute in suit.

The difficulty with respondent's reliance on *Professional Fire Fighters, Inc.,* and his argument otherwise, is that California courts have already determined that the conduct of municipal elections is a municipal affair and subject to municipal control. (*Socialist Party* v. *Uhl,* 155 Cal. 776, 788 [103 P. 181].) More recently (in 1965) the general rule adhered to in *Uhl* was followed by the appellate court in *City of Redwood City* v. *Moore,* 231 Cal.App.2d 563 [42 Cal.Rptr. 72], it there being held that "election procedures" in a chartered city are municipal affairs (p. 585). Too, in light of the observation in *Professional Fire Fighters* that "Not one of the cases cited [by the City] is authority for the statement which they are supposed to support" (*supra,* p. 292), the decisions just mentioned carry some added significance. On the other hand, such cases as *People* v. *Elkus,* 59 Cal.App. 396 [211 P. 34], are not helpful to respondent since it involves the right to vote, not the details thereof, by imposing a so-called "proportional representation" system of voting; the above dis-

tinction is borne out by the same court that decided *Elkus* which subsequently held that a chartered city (Sacramento) has control over the alphabetical listing on the ballot of candidates' surnames. (*Harder* v. *Denton,* 9 Cal.App.2d 607 [51 P.2d 199].) In the light of the *Harder* holding, and as appellant properly points out, state provisions as to the form of ballots, including the sequence of names thereon, should prevail over conflicting municipal provisions if, as urged by respondent, the whole matter of sample ballots is one of educating the voters beforehand and, therefore, one of statewide concern. Such conflict exists, of course, in that section 10202, Elections Code, provides for the placing of the incumbent first whereas section 326 of the charter (Los Angeles) requires all candidates to be listed in alphabetical order.

Finally, we perceive no substantial difference between the problem here and that which confronted the court in *Lawing* v. *Faull,* 227 Cal.App.2d 23 [38 Cal.Rptr. 417]. There it was concluded that the state Constitution had not intended to infringe on the chartered city control of its own initiative and referendum procedure, the court declaring at page 29: "It is noteworthy that in many fields of legislation local home rule has given way to the desirability of uniform state laws because of ever-increasing population and urbanization and the need for statewide uniformity in such areas as control of traffic, education, public health and public offenses. But with respect to the local exercise of the initiative and referendum we are dealing solely with matters on local legislation, and who best can determine what will provide most effectively a fine balance between the legislative powers delegated to the elected representatives of a city, on the one hand, and initiative and referendum powers reserved to the people of such city, on the other? Certainly, it is the people of the particular cities involved who are familiar with local conditions who are best able to regulate such matters either by means of charter provisions, which in their enactment require a majority vote of the electorate and concurrence by the Legislature, or by ordinance of their duly constituted legislative bodies acting within the limits prescribed in such charters."

The judgment is reversed.

Wood, P. J., and Fourt, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied July 17, 1968. Peters, J., and Mosk, J., were of the opinion that the petition should be granted.