[Civ. No. 34935. Second Dist., Div. Three. Apr. 21, 1970.]

THOMAS M. REES et al., Plaintiffs and Respondents, v.
REX E. LAYTON, as City Clerk, etc., Defendant and Appellant.

[Civ. No. 34947. Second Dist., Div. Three. Apr. 21, 1970.]

MAURICE D. RUTLEDGE et al., Plaintiffs and Respondents, v.
REX E. LAYTON, as City Clerk, etc., Defendant and Appellant.

[Civ. No. 34997. Second Dist., Div. Three. Apr. 21, 1970.]

CHRISTINA J. NEW, Plaintiff and Respondent, v.
REX E. LAYTON, as City Clerk, etc., Defendant and Appellant.

(Consolidated Cases.)

816

## COUNSEL

Roger Arnebergh, City Attorney, Bourke Jones and Claude E. Hilker, Assistant City Attorneys, for Defendant and Appellant.

Christina J. New, in pro. per., David M. Rothman, Barnet M. Cooperman and Stanley Rogers for Plantiffs and Respondents.

## Opinion

**SCHWEITZER, J.**—These three cases present the identical question, the validity of section 91 of the Election Code of the City of Los Angeles,[1] and have therefore been consolidated for purposes of appellate review. Section 91 of the city's Election Code provides in part: "A candidate who is running for the same elective office which he then holds shall have printed on the ballot, immediately underneath his name . . . the words designating such elective office. . . . *No candidate except an incumbent shall have any designation other than his name.*" (Italics added.) As a result an incumbent's occupation is stated on the ballot, whereas the non-incumbent's occupation cannot be designated thereon. Section 91 is inconsistent with state laws. (Elec. Code, §§ 10219 and 22602.)

### Questions Presented

(1) Has the state preempted the right of a chartered city to enact a provision in its municipal code in conflict with the state Elections Code?

(2) If not, is section 91 of the Election Code of the City of Los Angeles unconstitutional under the equal protection clause of the Fourteenth Amendment and article I, section 21, of the California Constitution?

### Facts

Petitioners were candidates for the offices of mayor, city council, and board of education of the City of Los Angeles at the 1969 municipal election. After the city clerk refused to designate on the ballot their respective professions, vocations or occupations, they sought and obtained peremptory writs of mandate against the city clerk granting the relief requested. The writs of mandate were issued February 3, 1969. Since it was necessary that the ballots be at the printer not later than February 4, 1969, there was no time for appellate review before the printing deadline. The city clerk complied with the mandate.

---

[1] The City Election Code (Ordinance No. 90,800) was adopted in 1946, pursuant to section 306 of the city charter which provides:

"Sec. 306. All elections shall, except as in this Charter otherwise provided, be conducted and held in accordance with the provisions of the laws of the state for the holding of general or special elections until such time as the Council by ordinance shall adopt a City Election Code. *After the adoption of such City Election Code all elections, except as in this Charter otherwise provided, shall be conducted in the manner therein prescribed.* The Council is hereby authorized to adopt a City Election Code, by ordinance; provided that no City Election Code shall be adopted, nor amendment made therein, during the six months immediately preceding any General Municipal Election in the City of Los Angeles, nor during the period between the ordering of any special election and the holding thereof." (Italics added.)

■ Since the election has been held, these cases are now moot. However, since the questions raised thereby will arise at future Los Angeles elections, the basic issues are not moot and an opinion thereon is proper. (See *Board of Education* v. *Watson,* 63 Cal.2d 829, 832 [48 Cal.Rptr. 481, 409 P.2d 481].)

It is conceded that the City of Los Angeles is a city chartered under the provisions of article XI, section 8, of the California Constitution.

### State Law

Article XI, section 8½ of the Caliornia Constitution provides in part:

"It shall be competent, in all charters framed under the authority given by Section 8 of this article, to provide, in addition to those provisions allowable by this Constitution, and by the laws of the State as follows:

". . . . . . . . . . . . . . . . . . . . .

"2. For the manner in which . . . the members of boards of education shall be elected . . .

". . . . . . . . . . . . . . . . . . . .

"4. For the manner in which and the time at which any municipal election shall be held . . .

"It shall be competent in any charter framed in accordance with the provisions of this section, or Section 8 of this article, for any city . . . , and plenary authority is hereby granted, . . . to provide therein or by amendment thereto, the manner in which, the method by which, . . . the . . . municipal officers and employees . . . shall be elected. . . . All provisions of any charter of any such city . . . , heretofore adopted, and amendments thereto, which are in accordance herewith, are hereby confirmed and declared valid."

In 1961 the Legislature enacted in part 2, division 12 of the state Elections Code, section 22601, which provides:

"The provisions of this part shall apply to all municipal elections except where otherwise provided for in the Constitution of the State or in a charter duly adopted or amended pursuant to the Constitution of this State."

In 1965 the Legislature added to part 2, division 12 of the state Elections Code, section 22602, which provides:

"The provisions of Section 10219 of this code, relating to ballot designations, shall apply to municipal elections, whether held in a general law or chartered city."

Section 10219 of the Elections Code, as amended in 1967, provides in part:

". . . [I]mmediately under the name of each candidate . . . may appear, at the option of the candidate, one of the following designations:

". . . . . . . . . . . . . . . . . . .

"(c) Words designating the principal profession, vocation or occupation of the candidate . . . ."

### Findings and Conclusions of Trial Court

The trial court found that the classification under section 91 of the city's Election Code "would in most cases provide a substantial advantage for the incumbent"; and that it "is unreasonable and arbitrarily discriminatory as between incumbents who are candidates, on the one hand, and candidates other than incumbents on the other hand." Its conclusions of law were that section 22602 was enacted subsequent to section 22601; that insofar as there be a conflict in the two sections, section 22602, being the latest declaration of legislative intent, controls; that section 22602 makes section 10219 applicable to chartered cities; that section 10219 is in direct conflict with section 91 of the Election Code of the City of Los Angeles; that "[t]he state law is superior and controlling;" and that section 91 is unconstitutional as constituting a denial of equal protection of laws.

### State Preemption

". . . California courts have already determined that the conduct of municipal elections is a municipal affair and subject to municipal control. (*Socialist Party* v. *Uhl,* 155 Cal. 776, 788 [103 P. 181].) More recently (in 1965) the general rule adhered to in *Uhl* was followed by the appellate court in *City of Redwood City* v. *Moore,* 231 Cal.App.2d 563 [42 Cal.Rptr. 72], it there being held that 'election procedures' in a chartered city are municipal affairs (p. 585)." (*Mackey* v. *Thiel,* 262 Cal.App.2d 362, 365 [68 Cal. Rptr. 717], hrg. den.) Other cases involving conflicts between general law and charter provisions relating to election matters in which the courts have held that the charter prevailed are *Muehleisen* v. *Forward,* 4 Cal.2d 17 [46 P.2d 969], *Scheafer* v. *Herman,* 172 Cal. 338 [155 P. 1084], *People* v. *Worswick,* 142 Cal. 71 [75 P. 663], and *Lawing* v. *Faull,* 227 Cal.App.2d 23 [38 Cal.Rptr. 417]. Each of the forementioned cases, except *Mackey,* was decided prior to the 1965 enactment of section 22602; *Mackey* did not involve section 22602. We have been unable to find any reported decision discussing the question as to the effect section 22602 has on the statutory exception set forth in section 22601.

■ "[R]epeals by implication are not favored. To the contrary, even though, in some particular or particulars, the provisions of two or more statutes apparently are in conflict one with the other, nevertheless, if possible and practicable, such seeming inconsistencies should be reconciled to the end that the law as a whole may be given effect." (*Southern Pac. Co.* v. *Railroad Comm.*, 13 Cal.2d 89, 100 [87 P.2d 1055].) ■ "[E]very statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect." (*Stafford* v. *Realty Bond Service Corp.*, 39 Cal.2d 797, 805 [249 P.2d 241].)

*City of Redwood City, supra,* 231 Cal.App.2d 563 was decided in January 1965, shortly before the Legislature enacted section 22602 at its 1965 session. In *City of Redwood City* the court stated at page 586: "Thus it is apparent that the provisions of this part [pt. 2, div. 12, Elec. Code] do not apply where a charter undertakes to provide for municipal elections."
■ In seeking to reconcile the two sections, it is reasonable to conclude that the Legislature had this pronouncement from the court in mind, that if it intended to override conflicting charter provisions by section 22602, it would have amended section 22601, and that its only intent was to amend part 2, division 12 of the Elections Code so as to make section 10219 specifically applicable to elections in general law cities and in those chartered cities where no conflicting local provisions exist.

Furthermore, this interpretation is reasonable when we realize that the Legislature had knowledge that many chartered cities, pursuant to the plenary power given them by article XI, section 8½ of the Constitution, had enacted ordinances pertaining to the control of municipal elections, that all statutes enacted must be subordinate to the provisions of the state Constitution (11 Cal.Jur.2d, Constitutional Law, § 30), and that the last unnumbered paragraph of article XI, section 8½ of the Constitution specifically limits the Legislature's power with respect to the provisions of the section to the enactment of laws necessary to implement the rights given chartered cities by article XI, section 8½ of the Constitution.

The trial court concluded that: "As the latest declaration of legislative intent, if any conflict does exist, section 22602 controls section 22601." This rule of statutory construction, calling for the last enactment to prevail, is applicable only if the two statutes cannot be reconciled. (*Coker* v. *Superior Court,* 70 Cal.App.2d 199, 201 [160 P.2d 885].) Since we have found that the reconciliation of the two statutes is reasonably possible, the rule relied on by the trial court is inapplicable.

■ We hold that section 22602 of the Elections Code (and thereby section 10219 of the Elections Code) does not apply to a chartered city

which, pursuant to article XI, section 8½ of the Constitution, has provided by its charter "for the manner in which" its municipal officers are elected.

## Constitutionality of Section 91

■ The Fourteenth Amendment to the federal Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." This clause requires "that persons under like circumstances be given equal protection and security in the enjoyment of personal and civil rights. . . . [It] requires that persons similarly situated receive equal treatment." (3 Witkin, Summary of Cal. Law (1960) Constitutional Law, § 125.) Article I, section 21 of the California Constitution prohibits the granting of special privileges or immunities to particular citizens or classes of citizens which are not granted to all.

In *Williams* v. *Rhodes,* 393 U.S. 23, 30 [21 L.Ed.2d 24, 31, 89 S.Ct. 5] the United States Supreme Court stated: "It is true that this Court has firmly established the principle that the Equal Protection Clause does not make every minor difference in the application of laws to different groups a violation of our Constitution. But we have also held many times that 'invidious' distinctions cannot be enacted without a violation of the Equal Protection Clause. In determining whether or not a state law violates the Equal Protection Clause, we must consider the facts and circumstances behind the law, the interests which the State claims to be protecting, and the interests of those disadvantaged by the classification."

■ There is a strong presumption in favor of the constitutionality of a legislative enactment. All doubts are to be resolved in favor of validity. (8) Before an act or ordinance will be declared unconstitutional, its unconstitutionality must appear clearly and unmistakably. (*Lockheed Aircraft Corp.* v. *Superior Court,* 28 Cal.2d 481, 484 [171 P.2d 21, 166 A.L.R. 701]; *Collins* v. *Riley,* 24 Cal.2d 912, 915 [152 P.2d 169].) ■ "[T]he legislative power must be upheld unless manifestly abused so as to infringe on constitutional guaranties." (*Ratkovich* v. *City of San Bruno,* 245 Cal. App.2d 870, 879 [54 Cal.Rptr. 333], hrg. den.) ■ The showing to be made by a party challenging the constitutionality of a statute or ordinance is "that, in short, there is no rational basis whatever for the statute." (*Higgins* v. *City of Santa Monica,* 62 Cal.2d 24, 31 [41 Cal.Rptr. 9, 396 P.2d 41].)

The city clerk states that the "reasonableness" and "rational basis" for section 91 is evident, that "[t]here is good and valid reason to *require* that the office held by incumbents running for reelection be designated on the ballot while at the same time precluding the occupational designation thereof of all candidates." First, the city ordinance requires the incumbent

to be designated; the state law permits the candidate to decide what, if any designation he desires on the ballot. The city argues that the city ordinance is therefore more informative for the electorate. Second, the city ordinance prevents a candidate from misleading the electorate by a "puffing" description of his occupation on the ballot; "we have all heard of the rubbish collector who refers to himself as a 'sanitation engineer.'" Third, the city ordinance eliminates the need for the city clerk to investigate the accuracy of a candidate's designated occupation and avoids possible "interference with the printing of ballots by last minute lawsuits challenging his determination thereon."

The city clerk argues: "If the city law were held invalid because it required the designation of incumbents (and thereby allegedly aided the election of incumbents), would not the state law likewise be invalid because it permitted the designation of occupations thereon and thereby might aid the election of a lawyer, for example, over one designated as a rubbish collector. It is submitted that each sysem has its benefits and each has its detriments but *both* are reasonable and valid in the elections to which they apply."

On the other hand, petitioners argue that a misleading occupation on the ballot would be fuel to an opponent's campaign, that the state statute is thereby self-policing. They also point out that there was an absence of evidence in support of the city clerk's assertions that the city ordinance prevents abuses or that the state law invites abuses.

No similar case has been called to our attention and we have found none. We therefore look to the general authorities cited above for assistance.

We do not agree with the argument and conclusions of the city clerk. The abuses he refers to appear to be more imaginary than real. (11) The records in each case support the trial court's conclusions that section 91 gives an unfair advantage to incumbents over non-incumbents, that there is no rational basis whatever for the ordinance. It was an invidious requirement, violative of both the Fourteenth Amendment of the federal Constitution and article I, section 21 of the California Constitution.

Judgments affirmed.

Cobey, Acting P. J., and Allport, J., concurred.

A petition for a rehearing was denied May 8, 1970, and appellant's petition for a hearing by the Supreme Court was denied June 17, 1970. Burke, J., was of the opinion that the petition should be granted.