[No. B056816. Second Dist., Div. Three. May 12, 1993.]

RONALD A. CAWDREY et al., Plaintiffs and Appellants, v.
CITY OF REDONDO BEACH et al., Defendants and Respondents.

## COUNSEL

Fleishman, Fisher & Moest, Barry A. Fisher and David Grosz for Plaintiffs and Appellants.

Gordon Phillips, City Attorney, Richards, Watson & Gershon, Glenn R. Watson, Michael Jenkins, Efrat M. Cogan and Jack S. Sholkoff for Defendants and Respondents.

Ronald A. Zumbrun, Anthony T. Caso and Deborah J. Martin as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

**KLEIN, P. J.**—Plaintiffs and appellants Ronald A. Cawdrey (Cawdrey) and Mark Conte (Conte) appeal the judgment denying their petition for writ of mandamus and application for injunctive relief from the refusal of defendants and respondents City of Redondo Beach (the City) and City Clerk John L. Oliver to permit Cawdrey to seek reelection to a third term on the city council.

The primary issues presented are (1) whether article XXVI, section 26 of the Redondo Beach City Charter (charter section 26), limiting the terms of the mayor and city council members, is a "municipal affair" authorized by article XI, section 5, subdivision (a) of the California Constitution;[1] and (2) whether charter section 26 violates the constitutional guarantees of free speech and equal protection.

Based on our review of the provisions of the California Constitution pertaining to local government, and the legislative enactments and case law thereunder, we determine term limits for elected officials do constitute a municipal affair, and thus are within the scope of the powers granted charter cities by article XI, section 5, subdivision (a). In addition, imposition of such

---

[1] All subsequent references to article XI are to the California Constitution.

limits does not violate other constitutional protections. The judgment therefore is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1949, the City adopted a charter "as the organic law of said City under the Constitution of the State of California." (Approved by the state Leg. Jan. 21, 1949, Assem. Conc. Res. No. 36, Stats. 1949, p. 2982; see art. XI, § 3; see also former art. XI, § 8.)

The charter provides, in pertinent part: "The City shall have the power to make and enforce all rules and regulations in respect to municipal affairs, subject only to such restrictions and limitations contained in this Charter and in the Constitution of the State of California. It shall also have the power to exercise any and all rights, powers and privileges heretofore or hereafter established, granted or prescribed by any law of the State, by this Charter, or by other lawful authority, or which a municipal corporation might or could exercise under the Constitution of the State of California. The specific enumeration in this Charter of any particular power shall not be held to be exclusive of, or any limitation upon, this general power." (Redondo Beach Official Charter, art. IV, § 4.)

In 1975 the voters of the City amended the charter by adding charter section 26 limiting the number of terms city council members and the mayor could serve.[2] The amendment provides no person shall serve more than two terms, whether consecutive or not. In the case of council members, the two-term limitation applies regardless of the districts represented.

Cawdrey served two full terms following service of a portion of a prior term as a City council member. In December 1990, the city clerk declined to accept his nomination papers for a third such term.

Cawdrey, and Conte, a City voter who wished to vote for Cawdrey, sought a writ of mandate from the superior court commanding the City to accept Cawdrey's nomination papers and to place his name on the ballot. They also sought to enjoin enforcement of charter section 26.

Following a hearing held on January 29, 1991, the trial court denied the petition and application for injunctive relief. It ruled charter section 26 is not

---

[2]Charter section 26 provides: "No person shall serve more than two full terms as [council member] from any combination of districts, or Mayor. If a person serves a partial term in excess of two years, it shall be considered a full term for the purpose of this provision. Previous and current terms of office shall be counted for the purpose of applying this provision to future elections although all persons presently in office shall be permitted to complete their present terms."

impermissible under the Constitutions of either the United States or the State of California, and its adoption is within the power and authority of the City and not a matter of statewide concern subject to the general laws of the state.

Thereafter, Cawdrey and Conte petitioned this court for a writ of mandate requiring the City to place Cawdrey's name on the ballot. The petition was summarily denied by Division Seven, and our Supreme Court denied review on February 14, 1991.

The present appeal is from the judgment of the trial court entered on February 4, 1991.

## CONTENTIONS

Cawdrey and Conte contend (1) the California Constitution does not authorize charter cities to limit the tenure in office of their elected officials; (2) the authority of charter cities to limit the tenure in office of their elected officials is preempted by state law; and (3) charter section 26 violates the constitutional guarantees of free speech and equal protection.

## DISCUSSION

1. *Overview of relevant state constitutional provisions and case law.*

Local governments in this state are governed by article XI of the California Constitution.

Article XI, section 7 provides that every city and county in the state possesses the general power to " 'make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws.' (Cal. Const., art. XI, § 7.)" (*Fisher* v. *City of Berkeley* (1984) 37 Cal.3d 644, 704 [209 Cal.Rptr. 682, 693 P.2d 261].)

█ Our case concerns the powers of *charter cities*, which have even greater authority than that authorized by article XI, section 7: "they have exclusive power to legislate over 'municipal affairs.' (Cal. Const., art. XI, § 5, subd. (a).)" (*Fisher* v. *City of Berkeley, supra,* 37 Cal.3d at p. 704.)

█ We find no cases, and the parties cite none, determining the question whether charter cities may impose term limits upon their elected officials. Cawdrey and Conte rely on *Younger* v. *Board of Supervisors* (1979) 93 Cal.App.3d 864 [155 Cal.Rptr. 921], which held unconstitutional a term limit provision of a *county* charter.

Charter counties are governed by article XI, section 4. The language of article XI, section 4, which *Younger* found determinative, also appears in article XI, section 5, governing charter cities. However, there is no provision in article XI, section 4, comparable to subdivision (a) of article XI, section 5, granting charter cities exclusive power to legislate over municipal affairs.

In addressing whether term limits constitute a municipal affair, recent decisions of our Supreme Court in *Johnson* v. *Bradley* (1992) 4 Cal.4th 389 [14 Cal.Rptr.2d 470, 841 P.2d 990], and *California Fed. Savings & Loan Assn.* v. *City of Los Angeles* (1991) 54 Cal.3d 1 [283 Cal.Rptr. 569, 812 P.2d 916] (*CalFed*), provide guidance. These cases explore the breadth of article XI, section 5, subdivision (a), and set forth a framework for ascertaining whether a given provision is within the plenary powers granted charter cities by subdivision (a) of section 5.

Pursuant to *Johnson* and *CalFed*, the issue to be resolved is whether term limits conflict with state statutes, and if so, whether the subject of term limits is of statewide concern. If so, the City may not act. If term limits are not of statewide concern, they constitute a municipal affair and are authorized by subdivision (a) of article XI, section 5.

Finally, *Legislature* v. *Eu* (1991) 54 Cal.3d 492 [286 Cal.Rptr. 283, 816 P.2d 1309], is instructive as to whether term limits violate the constitutional guarantees of free speech and equal protection.

2. *Charter counties as distinguished from charter cities.*

a. *Charter counties: article XI, section 4, and Younger.*

As noted, Cawdrey and Conte rely on *Younger*, *supra*, 93 Cal.App.3d 864, which held unconstitutional a term limit provision of the San Diego County Charter.

Charter *counties* are governed by article XI, section 4.[3] The relevant provisions of article XI, section 4, direct that county charters shall provide

---

[3]Article XI, section 4: "County charters shall provide for: [¶] (a) A governing body of 5 or more members, elected (1) by district or, (2) at large, or (3) at large, with a requirement that they reside in a district. Charter counties are subject to statutes that relate to apportioning population of governing body districts. [¶] (b) The compensation, terms, and removal of members of the governing body. If a county charter provides for the Legislature to prescribe the salary of the governing body, such compensation shall be prescribed by the governing body by ordinance. [¶] (c) An elected sheriff, an elected district attorney, an elected assessor, other officers, their election or appointment, compensation, terms and removal. [¶] (d) The performance of functions required by statute. [¶] (e) The powers and duties of governing bodies and all other county officers, and for consolidation and segregation of county officers,

for "[t]he compensation, terms, and removal of members of the governing body" (art. XI, § 4, subd. (b)); and "[t]he fixing and regulation by governing bodies, by ordinance, of the appointment and number of assistants, deputies, clerks, attaches, and other persons to be employed, and for the prescribing and regulating by such bodies of the powers, duties, *qualifications*, and compensation of such persons, the times at which, and terms for which they shall be appointed, and the manner of their appointment and removal" (art. XI, § 4, subd. (f), italics added). (See also, *Younger, supra*, 93 Cal.App.3d at pp. 871-872.)

Also applicable is article XI, section 1, subdivision (b), relating to counties, which directs: "The governing body shall provide for the number, compensation, *tenure*, and appointment of employees." (Italics added.) (See also, *Younger, supra*, 93 Cal.App.3d at p. 872.)

*Younger* held: "The exclusion of the words 'qualifications' and 'tenure' from the grant of powers to charter counties regarding county *officers* and the specific inclusion of the power to set 'qualifications' and 'tenure' for *nonelected employees* discloses an intent by the framers of the Constitution to retain statewide control over the qualifications of the former while releasing such control over the latter." (*Younger, supra*, 93 Cal.App.3d at p. 872, italics added.)

■ Therefore, according to the controlling case on the subject, charter *counties* do not have the power to set qualifications, or tenure, i.e., term limits, for their elected officials.

b. *The home rule powers of charter cities: article XI, section 5.*

In contrast, subdivision (a) of article XI, section 5, "sets out the general principle of local self-governance [for charter cities], and provides: 'It shall be competent in any city charter to provide that the city governed thereunder may *make and enforce all ordinances and regulations in respect to municipal*

---

and for the manner of filling all vacancies occurring therein. [¶] (f) The fixing and regulation by governing bodies, by ordinance, of the appointment and number of assistants, deputies, clerks, attaches, and other persons to be employed, and for the prescribing and regulating by such bodies of the powers, duties, qualifications, and compensation of such persons, the times at which, and terms for which they shall be appointed, and the manner of their appointment and removal. [¶] (g) Whenever any county has framed and adopted a charter, and the same shall have been approved by the Legislature as herein provided, the general laws adopted by the Legislature in pursuance of Section 1(b) of this article, shall, as to such county, be superseded by said charter as to matters for which, under this section it is competent to make provision in such charter, and for which provision is made therein, except as herein otherwise expressly provided. [¶] (h) Charter counties shall have all the powers that are provided by this Constitution or by statute for counties."

*affairs*, subject only to the restrictions and limitations provided in their several charters and in respect to other matters they shall be subject to general laws. City charters adopted pursuant to this Constitution [fn. omitted] shall supersede any existing charter, *and with respect to municipal affairs shall supersede all laws inconsistent therewith.*' [Citation.]" (*Johnson, supra*, 4 Cal.4th at p. 397, second italics ours.)

Language like that found significant in *Younger* can be found in subdivision (b) of article XI, section 5. That section lists four nonexclusive "core" categories of municipal affairs for which city charters may provide.[4] Among these, charter cities are granted plenary authority to establish the manner, method, times at which, and terms for which, *municipal officers* shall be elected, and the *qualifications* and *tenure of office* of "deputies, clerks, and other employees" of elected municipal officers.

■ The question is whether this language leaves charter cities, like charter counties, without power to impose term limits upon elected officials.

c. *Charter counties and charter cities compared.*

There is a fundamental distinction between charter counties and charter cities. ■ The constitutional provisions relating to charter counties (*ante*, fn. 3), "in contrast to article XI, section 5, contain no general reservation of local autonomy, and no grant of 'plenary' authority over local election matters. (Fn. omitted.)" (*Johnson, supra*, 4 Cal.4th at pp. 405-406.)

■ As the *Younger* court observed, "*counties constitute merely political subdivisions of the state*," and "have independently only such legislative authority that has been expressly conferred by the Constitution and laws of the state. If the latter sources are silent in regard to the delegation of such authority, the authority must still rest with the Legislature. [Citation.]" (*Younger, supra*, 93 Cal.App.3d at p. 870, italics added.)

■ On the other hand, a city charter is not a grant of powers, but rather "an instrument which accepts the privilege granted by the Constitution of

---

[4] Article XI, section 5, subdivision (b), provides: "It shall be competent in all city charters to provide, in addition to those provisions allowable by this Constitution, and by the laws of the State for: (1) the constitution, regulation, and government of the city police force (2) subgovernment in all or part of a city (3) conduct of city elections and (4) plenary authority is hereby granted, subject only to the restrictions of this article, to provide therein or by amendment thereto, the manner in which, the method by which, the times at which, and the terms for which the several *municipal officers and employees* whose compensation is paid by the city shall be elected or appointed, and for their removal, and for their compensation, and for the number of deputies, clerks and other employees that each shall have, and for the compensation, method of appointment, qualifications, tenure of office and removal of such deputies, clerks and other employees." (Italics added.)

complete autonomous rule with respect to municipal affairs, and which otherwise serves merely to specify the limitations and restrictions upon the exercise of the powers so granted and accepted. Therefore any such power not expressly forbidden may be exercised by the municipality, and any limitations upon its exercise are those only which have been specified in the charter." (*West Coast Adver. Co.* v. *San Francisco* (1939) 14 Cal.2d 516, 522 [95 P.2d 138].)

In sum, while a charter *county* possesses only those powers specifically enumerated in the Constitution (*Younger, supra,* 93 Cal.App.3d at p. 872), a *city* charter provision which is not within the matters enumerated in the Constitution is nevertheless within a charter city's authority to act, provided the provision concerns a "municipal affair." (*West Coast Adver. Co., supra,* 14 Cal.2d at p. 522; *Adams* v. *Wolff* (1948) 84 Cal.App.2d 435, 442-443 [190 P.2d 665].)

3. *Application of article XI, section 5, dealing with charter cities generally.*

Our Supreme Court has recently considered the scope of the powers granted charter cities by article XI, section 5, subdivision (a). (*Johnson, supra,* 4 Cal.4th 389; *CalFed, supra,* 54 Cal.3d 1.)

*CalFed* analyzed various cases and concluded they " 'reject a static and compartmentalized description of "municipal affairs" in favor of a more dialectical one. Out of these cases emerges the counterpoint of "statewide concern" as a conceptual limitation on the scope of "municipal affairs" and thus on the supremacy of charter city measures over conflicting legislative enactments.' ([*CalFed, supra,*] 54 Cal.3d at p. 13 . . . .)" (*Johnson, supra,* 4 Cal.4th at p. 398.)

*CalFed* acknowledged: " 'No exact definition of the term "municipal affairs" can be formulated and the courts have made no attempt to do so, but instead have indicated that judicial interpretation is necessary to give it meaning in each controverted case.' [Citation.]" (*CalFed, supra,* 54 Cal.3d at p. 16; *Johnson, supra,* 4 Cal.4th at p. 398.) The court noted that " 'our decisions have also strived to confine the element of judicial interpretation by hedging it with a judicial procedure intended to bring a measure of certainty to the process . . . .' ([*CalFed, supra,*] 54 Cal.3d] at p. 16.)" (*Johnson, supra,* 4 Cal.4th at p. 398.)

 *CalFed* set forth the method by which conflicts between state statutes and charter city measures may be resolved. First, the court " 'must satisfy

itself that the case presents an actual conflict between the two. If it does not, a choice between the conclusions "municipal affair" and "statewide concern" is not required.' (*CalFed, supra,* 54 Cal.3d at p. 16.)" (*Johnson, supra,* 4 Cal.4th at pp. 398-399.)

When the charter city measure " 'implicates a "municipal affair" and poses a genuine conflict with state law,' " the determinative question is whether the subject of the statute is of statewide concern. (*Johnson, supra,* 4 Cal.4th at p. 399.) If it is not, " 'the conflicting charter city measure is a "municipal affair" and "beyond the reach of legislative enactment." . . . If, however, . . . the subject of the state statute is one of statewide concern and . . . the statute is reasonably related [and "narrowly tailored" [fn. omitted]] to its resolution, then the conflicting charter city measure ceases to be a "municipal affair" pro tanto and the Legislature is not prohibited by article XI, section 5[, subdivision] (a), from addressing the statewide dimension by its own tailored enactments.' (*CalFed, supra,* 54 Cal.3d at p. 17.)" (*Id.,* p. 399.)

The court's duty is to " ' "allocate the governmental powers under consideration in the most sensible and appropriate fashion as between local and state legislative bodies." ' (*CalFed, supra,* 54 Cal.3d 17, . . . quoting [Van Alstyne,] Background Study [Relating to Article XI, Local Government, Cal. Const. Revision Com., Proposed Revision (1966)] at p. 239.)" (*Johnson, supra,* 4 Cal.4th at p. 400.)

4. *Application of article XI, section 5 to the facts of this case.*

a. *Term limits implicate a municipal affair.*

 Charter section 26 of the City here implicates a municipal affair, that is, the election of municipal officers. (*Mackey* v. *Thiel* (1968) 262 Cal.App.2d 362, 365-366 [68 Cal.Rptr. 717]; *Socialist Party* v. *Uhl* (1909) 155 Cal. 776, 778 [103 P. 181].)

b. *There is an apparent conflict between state statutes and charter city measure.*

Cawdrey and Conte do not contend there is any direct conflict between state law and charter section 26, and we find none.[5] The conflict arises, they assert, because the authority of charter cities to impose term limits upon their elected officials is preempted by state law.

---

[5]In contrast, in both *CalFed, supra,* 54 Cal.3d 1, and *Johnson, supra,* 4 Cal.4th 389, the city provision was in direct conflict with state law. In *CalFed,* an annual license tax on businesses within the City of Los Angeles conflicted with the state Legislature's 1979 amendment of

██ ██ ██ Cawdrey and Conte rely on *Steinkamp* v. *Teglia* (1989) 210 Cal.App.3d 402 [258 Cal.Rptr. 265], and *Polis* v. *City of La Palma* (1992) 10 Cal.App.4th 25 [12 Cal.Rptr.2d 322], which rejected term limit ordinances enacted by *general law cities.*[6] Those cases looked to Government Code section 36502, which sets forth eligibility requirements for local offices, and found no authority for imposition of term limits.[7] *Steinkamp* concluded Government Code section 36502, together with Government Code section 24001, setting forth the eligibility requirements for *county* office, "established a legislative intent 'to preempt local regulation of eligibility for election to local governing bodies, whether they are *charter counties or general law cities.*' ([*Steinkamp, supra*, 210 Cal.App.3d] at p. 404.)" (*Polis, supra*, 10 Cal.App.4th at pp. 27-28, italics added.)

Section 36502 appears in title 4 (Government of Cities), division 3 (Officers), part 1 (General) of the code (Gov. Code, §§ 36501-36524). Section 36501 of the Government Code provides: "The government of a *general law city* is vested in: [¶] (a) A city council of five members. [¶] (b) A city clerk. [¶] (c) A city treasurer. [¶] (d) A chief of police. [¶] (e) A fire chief. [¶] (f) Such subordinate officers or employees as are provided for by law." (Italics added.) Immediately following is section 36502, which concerns eligibility to hold office as council member, city clerk, or city treasurer, and provides a person must be an elector of the city at the time of assuming such office, as well as a registered voter of the city at the time of issuance of nomination papers to the candidate.

---

Revenue and Taxation Code section 23182, "which declared that a state income tax on financial corporations such as [CalFed] was in lieu of all other taxes and licenses, including charter city business license taxes." (*CalFed, supra*, 54 Cal.3d at p. 6.) In *Johnson*, a city charter provision calling for partial public funding of campaigns for city elective offices conflicted with a statewide initiative banning public financing of any election campaign. (*Johnson, supra*, 4 Cal.4th at p. 392.)

[6]Again in contrast to a charter city, a *general law city* governed by article XI, section 7, lacks the plenary authority over municipal affairs granted charter cities by article XI, section 5, subdivision (a). " '[G]eneral law cities are simply creatures of the state and as such are parts of the machinery by which the state conducts its governmental affairs.' [Citations.]" (*Steinkamp* v. *Teglia, supra*, 210 Cal.App.3d at p. 404.) A general law city " 'has only those powers expressly conferred upon it by the Legislature, together with such powers as are "necessarily incident to those expressly granted or essential to the declared object and purposes of the municipal corporation." The powers of [a general law] city are strictly construed, so that "any fair, reasonable doubt concerning the exercise of a power is resolved against the corporation." [Citation.]' [Citations.]" (*Martin* v. *Superior Court* (1991) 234 Cal.App.3d 1765, 1768 [286 Cal.Rptr. 513].)

[7]Government Code section 36502 states: "A person is not eligible to hold office as a [council member], city clerk, or city treasurer unless [the person] is at the time of assuming such office an elector of the city, and was a registered voter of the city at the time nomination papers are issued to the candidate as provided for in Section 22842 of the Elections Code. [¶] If, during [the person's] term of office, [the person] moves [the person's] place of residence outside of the city limits or ceases to be an elector of the city, [the person's] office shall immediately become vacant."

*Smith* v. *Evans* (1974) 42 Cal.App.3d 154 [116 Cal.Rptr. 684], referred to a prior version of section 36502 which imposed a one-year residency requirement, as appearing "in statutes regulating candidacy in *nonchartered* counties and cities. [Fn. omitted.]" (42 Cal.App.3d at p. 156, italics added.) However, Government Code section 36503.7, which also appears in part 1 of division 3 of title 4, and which has to do with the period to file as a candidate for municipal election, states: "If the date of a general municipal election is changed pursuant to Section 36503.5, or by *charter* . . . ."

Cawdrey and Conte also cite Government Code section 34882, concerning eligibility to hold office in a city divided into districts, as is the City.

Section 34882 also appears in title 4 of the Government Code. The section is found in division 2 (Organization and Boundaries), part 4 (Alternative Forms of Government), article 2 (Election of Legislative Body by or From Districts in Cities) (Gov. Code, §§ 34870-34884). Government Code section 34870 provides: "This article applies only to *cities*." (Italics added.) Section 34882 of the Government Code provides, in part: "A person is not eligible to hold office as a member of a municipal legislative body unless [the person] is otherwise qualified, resides in the district and both resided in the geographical area making up the district from which [the person] is elected and was a registered voter of the city at the time nomination papers are issued to the candidate as provided for in Section 22842 of the Elections Code."

■ Cawdrey and Conte urge Government Code sections 36502 and 34882, neither of which is expressly *inapplicable to charter cities*, and both of which concern eligibility to hold office, demonstrate a legislative intent to preempt the authority of all local governmental bodies, including charter cities, to set term limits for their elected officials.

While section 36502 logically appears to apply only to *general law cities*, both Government Code sections concerning eligibility for city elective office, 36502 and 34882, are facially equally applicable to charter and general law cities. For the purposes of this opinion, we assume those sections of the Government Code applicable to cities generally were intended by the Legislature to apply to both charter and general law cities. (See *Cox Cable San Diego, Inc.* v. *City of San Diego* (1987) 188 Cal.App.3d 952, 963 [233 Cal.Rptr. 735]; *City of Los Angeles* v. *Department of Health* (1976) 63 Cal.App.3d 473, 478 [133 Cal.Rptr. 771].)

Although charter section 26 conflicts with the state statutory scheme governing local elections, the city charter measure is permissible if term limits are not of statewide concern.

### c. *Term limits for city officials are not of statewide concern.*

■ " '[T]he fact, standing alone, that the Legislature has attempted to deal with a particular subject on a statewide basis is not determinative of the issue as between state and municipal affairs . . . ; stated otherwise, the Legislature is empowered neither to determine what constitutes a municipal affair nor to change such an affair into a matter of statewide concern.' [Citations.] As [our Supreme Court] explained in *CalFed, supra,* 54 Cal.3d 1, our inquiry regarding statewide concern focuses not on the legislative body's intent, but on 'the identification of a convincing basis for legislative action originating in extramunicipal concerns, one justifying legislative supersession based on sensible, pragmatic considerations.' [Citation.] In other words, we must be satisfied that there are good reasons, grounded on statewide interests, to label a given matter a 'statewide concern.' " (*Johnson, supra,* 4 Cal.4th at p. 405.)

### (1) *Cawdrey and Conte's arguments in favor of statewide concern are unpersuasive.*

■ In support of their contention that term limits are a matter of statewide concern, Cawdrey and Conte cite *People* v. *Elkus* (1922) 59 Cal.App. 396 [211 P. 34], holding the predecessor of article XI, section 5, subdivision (b), did not authorize charter cities to adopt a proportional representation system of voting for city council members. They also rely on *Rees* v. *Layton* (1970) 6 Cal.App.3d 815 [86 Cal.Rptr. 268], holding invalid a charter provision permitting only incumbency to be designated on the ballot and not the occupations of other candidates. In addition, they cite an opinion of then Attorney General Mosk that a state statute requiring a verified campaign statement of each candidate for public office applied to candidates in charter city elections (35 Ops.Cal.Atty.Gen. 230, 231-232 (1960)).

These rulings concerned the fundamental right to vote, equal protection, and disclosure of campaign contributions and expenditures, respectively, all obviously matters of statewide concern.

Charter section 26 has no bearing on the reporting of campaign finances. As will be seen below, term limit provisions do not violate the equal protection clause or impermissibly infringe upon the fundamental right to vote.

Cawdrey and Conte contend the state Constitution recognizes laws having to do with the right to vote for the candidate of one's choice and the right to

seek public office are matters of statewide concern and beyond the powers of a charter city. In support of this contention, they cite subdivision (b) of article XI, section 5 (*ante*, fn. 4), granting charter cities plenary authority over the manner by which municipal officers are elected. They argue subdivision (b) limits a charter city to regulating election *procedures* only.

*Johnson* rejected the narrow interpretation of the word "manner" urged by the petitioners in that case, and Cawdrey and Conte in ours. In any event, here, as in *Johnson*, we need not determine the exact scope of the power granted charter cities by subdivision (b) of article XI, section 5, as we determine charter section 26 is enforceable as a municipal affair under subdivision (a) of article XI, section 5. (*Johnson, supra*, 4 Cal.4th at pp. 403-404.)

In their reply brief, Cawdrey and Conte point to the interdependence of modern local communities, the mobility of people, the rapidity of communications, and the effects of municipal legislation on nonresidents who enter a city, or work or own property in it. They argue "municipal restrictions on voter choice will inevitably make themselves felt outside the municipalities' geographic boundaries. The effect is multiplied if term limitations proliferate throughout the state . . . ."

Under the test suggested by this argument, virtually all aspects of modern city government are of statewide concern. The test would nullify subdivision (a) of article XI, section 5, granting charter cities exclusive power to legislate over municipal affairs.

Cawdrey and Conte also point to reasons given by certain framers of the federal Constitution for rejecting term limits at the time of adoption of that instrument. (2 Elliot, The Debates in the Several State Conventions on the Adoption of the Federal Constitution (2d ed. 1907) p. 320.)[8] The electoral experience since that time has produced the Twenty-second Amendment to the Constitution of the United States, which limits the President to two terms in office; Proposition 140, which imposes term limits for California state legislators and other officers; and most recently, Los Angeles Charter Amendment 2, which limits city council members, the mayor, city clerk, city attorney, and city controller, to two 4-year terms in office.

(2) *The City's arguments against statewide concern are persuasive.*

The City, on the other hand, points to the arguments in favor of adoption of charter section 26 made to the voters of the City. These include a need for

[8]However, apparently Thomas Jefferson's ideal was that there ought to be periodic replenishment in government.

new energy and new ideas, and a concern that the advantages of incumbency lead to entrenched officials whose enthusiasm decreases, who fail to keep up with new political needs, and who become too familiar with other city officials and with companies doing business with the City. "The net result is that the government eventually becomes dominated by an elite group of people accountable primarily to each other. This has happened in the past in [the City] and is still a problem. It can be alleviated by the two-term limit. [¶] Past decisions about population density, highrise, and redevelopment might have been different had these offices changed hands more often." (Argument for Prop. B.)

As the City points out, the persons primarily affected by charter section 26 are City council members and residents. Council members can only exercise the City's police powers within the City, and charter section 26 has at most a minimal extraterritorial effect.

While " 'in many fields of legislation local home rule has given way to the desirability of uniform state laws because of ever-increasing population and urbanization and the need for statewide uniformity in such areas as control of traffic, education, public health and public offenses' " (*Mackey* v. *Thiel, supra,* 262 Cal.App.2d at p. 366), term limits for City officials have to do solely with local concerns, and the electors of the City who are familiar with local conditions are best able to determine the desirability of such a charter provision.

After carefully considering legal precedents and the litigants' arguments, we hold charter section 26, imposing term limits upon the City's mayor and council members, is a municipal affair within the authority granted the City by subdivision (a) of article XI, section 5.

5. *The constitutional guarantees of free speech and equal protection are not impinged by our ruling.*

Cawdrey and Conte contend the term limitations of charter section 26 violate federal and state constitutional guarantees of free speech and equal protection. Their arguments are meritless.

In *Legislature* v. *Eu, supra,* 54 Cal.3d 492, our Supreme Court considered the constitutionality of the initiative measure designated on the ballot as Proposition 140 and adopted at the November 6, 1990, General Election. Proposition 140 provided, inter alia, for imposition of term limits for state legislators and various state constitutional officers.

The Supreme Court, citing *Anderson* v. *Celebrezze* (1983) 460 U.S. 780 [75 L.Ed.2d 547, 103 S.Ct. 1564], set forth three elements to be

considered in determining the constitutionality of state laws restricting access to the ballot: "(1) the nature of the injury to the rights affected, (2) the interests asserted by the state as justifications for that injury, and (3) the necessity for imposing the particular burden affecting the plaintiff's rights, rather than some less drastic alternatives." (*Legislature* v. *Eu, supra,* 54 Cal.3d at p. 517.)

The same analysis applies to local election laws in this state. (*Canaan* v. *Abdelnour* (1985) 40 Cal.3d 703, 712-713 [221 Cal.Rptr. 468, 710 P.2d 268, 69 A.L.R.4th 915].)

a. *The nature of the injury.*

Proposition 140 affected two important rights, namely, the incumbent's right to run for public office, and the voters' right to reelect the incumbent to that office. Proposition 140 injured those rights by imposing a lifetime exclusion of the incumbent from the office previously held, and precluding the voters from returning the incumbent to that office. (*Legislature* v. *Eu, supra,* 54 Cal.3d at p. 517.) Charter section 26 affects the same rights and causes the same injury to those rights.

Nevertheless, the *Eu* court found several mitigating aspects of Proposition 140, "including the voters' continued right to vote for any qualified candidates, as well as the candidates' ability to run for other public offices, their entitlement to a significant period of service in office before the term limitations apply, and the 'prospective' application of the limitation provision." (*Legislature* v. *Eu, supra* 54 Cal.3d at p. 519.)

Similarly, in our case, charter section 26 regulates only the number of terms a candidate may serve as City council member or mayor. It does not preclude Cawdrey, who has enjoyed a significant period of service as a member of the city council, from seeking election to other City offices, including that of mayor. In addition, City voters retain the right to vote for any qualified candidates.

b. *The interests asserted by the City.*

The interests asserted by the state in *Eu* were much the same as those asserted by the City in this case. The state term limits in *Eu* were "deemed necessary to restore 'free, fair, and competitive elections,' to 'encourage qualified candidates to seek public office,' and to eliminate 'unfair incumbent advantages' that have resulted in an 'extremely high number of incumbents' and created 'a class of career politicians' instead of the 'citizen

representatives envisioned by the Founding Fathers.' " (*Legislature* v. *Eu*, *supra*, 54 Cal.3d at p. 520.)

*Eu* cited with approval the decision in *State* ex rel. *Maloney* v. *McCartney* (1976) 159 W.Va. 513 [223 S.E.2d 607, 611], where the West Virginia Supreme Court stated, inter alia: " 'The universal authority is that restriction upon the succession of incumbents serves a rational public policy and that, while restrictions may deny qualified [candidates] an opportunity to serve, as a general rule the over-all health of the body politic is enhanced by limitations on continuous tenure.' " (*Legislature* v. *Eu*, *supra*, 54 Cal.3d at p. 520.)

*Eu* found "the state's strong interests in protecting against an entrenched, dynastic legislative bureaucracy, and in thereby encouraging new candidates to seek public office, are both legitimate and compelling ones that support a lifetime ban from the office and outweigh any interest the incumbent legislators, or the voting public, may have in perpetuating the incumbent's positions of control." (*Legislature* v. *Eu*, *supra*, 54 Cal.3d at p. 520.)

In our case, the electors of the City favorably responded to similar arguments expressed in favor of charter section 26, as discussed above.

 c. *The necessity for term limits.*

The petitioners in *Eu* urged a lifetime ban on candidacy was unnecessary, and other, less drastic alternatives such as a limitation on consecutive terms, together with additional restrictions on campaign contributions, decreased fringe and pension benefits, and additional incentives for early retirement, would have been sufficient to promote and accomplish the state's interests. *Eu* found these alternatives "would have been inadequate to accomplish the declared purpose of Proposition 140 to eliminate the 'class of career politicians' that assertedly had been created by virtue of the 'unfair incumbent advantages' referred to in that measure. (Cal. Const. art. IV, § 1.5.)" (*Legislature* v. *Eu*, *supra*, 54 Cal.3d at p. 523.)

Cawdrey and Conte argue charter section 26 is unnecessary, citing characteristics particular to the City, such as its size and political circumstances. The question of necessity is not subject to determination on a city-by-city basis. *Eu* decided the voters of a governmental entity could reasonably conclude ensured turnover of political office was essential to a properly functioning democratic system. In the present case, the enactment of charter section 26 reflected the voters' collective belief that term limits were necessary to prevent political control of the City by entrenched incumbents.

Finally, Cawdrey and Conte advance no lesser alternative to charter section 26 sufficient to accomplish the City's interests in adopting the charter amendment.

On balance, we conclude the interests of the City in incumbency reform outweigh any injury to incumbent officeholders and those who would vote for them. (*Legislature* v. *Eu*, *supra*, 54 Cal.3d at p. 524.)

## CONCLUSION

Charter section 26, imposing term limits upon elected officials of the City, is permissible under the California Constitution and does not violate the free speech or equal protection guarantees of the federal or California Constitution. The trial court properly found charter section 26 enforceable.

## DISPOSITION

The judgment is affirmed.

Croskey, J., and Hinz, J., concurred.